OPINION OF THE COURT
Bruce M. Kaplan, J.
The last several years have borne witness to the enactment of Federal and State legislation calculated to provide a definitive scheme for the resolution of the ofttimes anarchic area of interstate and international child custody determination, enforcement and modification. This matter well illustrates how the literal application of statutory language would preclude rendition of a determination based on the best interests of the child, the paramount consideration in child custody matters.
This proceeding was brought by petitioner Felix C. against respondent Elba M. for custody of their son Gary. It requires this court to decide whether a 1973 ex parte *301 Puerto Rican divorce decree, which awarded him Gary’s custody in an action where respondent was served by publication, is entitled to recognition and enforcement.
The court, after hearing testimony by the parties, reviewing the documentary evidence and digesting the legal memoranda submitted, concludes that the Puerto Rican decree is not entitled to recognition, and that the best interests of the child require that his custody be awarded to respondent.
FACTS
The parties were married in Puerto Rico on June 19, 1965 and had continuously resided there when their youngest child, Gary, was born on August 28, 1972.
March, 1973 marked a period of intense marital discord. Petitioner demanded that respondent leave their home, and she fled with Gary, then seven and one-half months old. Respondent and Gary stayed briefly with her aunt in Puerto Rico but moved to New York City some time in early April of 1973 after petitioner threatened to kill her.
Shortly after the departure of respondent and Gary from Puerto Rico, petitioner commenced a divorce proceeding against respondent in Superior Court, Humacao Part, Puerto Rico. Respondent was not personally served in the divorce proceeding. In lieu of any attempt at personal service, petitioner served her by means of publication in the San Juan periodical, El Dia. After a hearing on September 28, 1973 at which respondent understandably did not appear, the Superior Court issued a default divorce decree on October 4,1973, granting the patria potestas and custody of the children to petitioner. Significantly, the Puerto Rican court specifically noted that Gary was residing with respondent, and ordered the father to pay $10 per week toward the support of the child.
Petitioner failed to comply with the support provision of the decree, and in 1976 respondent brought a proceeding in the Puerto Rican court to enforce it.
From October, 1973 until early March, 1979 petitioner made no attempt to obtain physical custody of Gary, who resided with respondent in New York. On March 6,1979 he *302 secured a writ of habeas corpus from the Puerto Rican court, which ordered the return of the physical custody of Gary to petitioner. Its decision was based solely on the custody provisions contained in the 1973 divorce decree. Respondent did not appear at the habeas corpus proceeding in Puerto Rico, although allegedly she was personally served.
In July, 1980 petitioner obtained a writ of habeas corpus in the Bronx Family Court, which was dismissed for reasons extraneous to the merits of the case due to circumstances beyond petitioner’s control.[1]
The present petition was filed on June 5,1981. Hearings were held on November 23 and 24, 1981 after which the attorneys were given an opportunity to submit legal memoranda.
At the time of the commencement of this proceeding, Gary was almost nine years old. He had lived with his mother in New York for over eight years, had not spent any significant amount of time with his father since he was seven and one-half months old,[2] and did not know his father at all. Respondent has been solely responsible for Gary’s care and has provided most of his financial support, including the funds necessary to send him to private school.
In an in camera interview, Gary expressed his desire to continue to live with his mother and stated that petitioner was a total stranger to him.
ISSUES PRESENTED
The salient issues in this proceeding are: (1) whether this court must recognize and enforce the custody provisions of the Puerto Rican divorce decree and, (2) if it must recognize and enforce the decree, whether it is empowered to modify that decree.
These issues are governed by both the Parental Kidnaping Prevention Act (PKPA, US Code, tit 28, § 1738A) and *303 the Uniform Child Custody Jurisdiction Act (UCCJA) as adopted by New York in article 5-A of the Domestic Relations Law. The relationship between these acts was discussed by this court in Leslie L. F. v Constance F. (110 Misc 2d 86, 88), which noted that the PKPA established a Federal policy of pre-emption in the area of recognition and enforcement of out-of-State child custody determinations.
Resolution of the present custody dispute first turns on whether the Puerto Rican decree complied with the provisions of the PKPA. If its enforcement were not required by the PKPA, then an inquiry into its compliance with UCCJA must be made. If the decree met the requirements of either of these statutes, it would qualify for recognition and enforcement by this court. It would then be necessary to determine whether this court was empowered to modify the decree.
THE PUERTO RICAN DECREE WAS NOT CONSISTENT WITH THE REQUIREMENTS OF THE PKPA OR UCCJA
The PKPA requires that full faith and credit be accorded to child custody determinations when made by a court of another State or Puerto Rico consistently with title 28 (§ 1738A, subd [c], pars [1], [2]) of the United States Code.
In pertinent part, section 1738A (subd [c], par [1], [2]) provides:
“(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
“(1) such court has jurisdiction under the law of such State; and
“(2) one of the following conditions is met:
“(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State”.
*304 Section 1738A (subd [c], par [2], cl [A], subcl [ii]) was satisfied in the present case in that Puerto Rico was the child’s home State within six months before the date of the commencement of the divorce proceeding, the child had been removed from there by respondent, and petitioner continued to live in Puerto Rico.
In addition, respondent concedes that section 383 of the Civil Code of Puerto Rico vests the Puerto Rican court with subject matter jurisdiction to rule on the issue of custody of minor children when hearing an action for divorce. This does not put an end to the inquiry. In order to render the custody decree, it is not enough to determine that the Puerto Rican court had subject matter jurisdiction over the action. There must be demonstrated that it had personal jurisdiction over respondent as well.
The question of whether the Puerto Rican court retained personal jurisdiction over respondent is very much an open one. Section 383 of the Civil Code does not specify the type of service which is required to obtain personal jurisdiction over a respondent in a custody proceeding. As it was worded at the time of the divorce proceeding in 1973, it provided that “[i]n all cases of divorce, the minor children shall be placed under the care and ‘patria potestas’ of the party who has obtained the decree”. Petitioner reasons that since this section dealt with matters flowing from obtaining a divorce, the method of service required in a proceeding where there was an award of custody should be controlled by section 331 of the Civil Code which specified the method of service in divorce proceedings.
Section 331 of the Civil Code provided that a divorce action can be “instituted in the ordinary manner”. This language has been interpreted by the Puerto Rican courts to include service by publication. (Subirana v Cortada, 38 PRR 183.) Petitioner argues that the service by publication in the present case satisfied the predicates for personal jurisdiction in custody proceedings under Puerto Rican law and, therefore, rendered the custody decree consistent with title 28 (§ 1738A, subd [c], par [1]) of the United States Code. Thus, he concludes, the decree is entitled to recognition and enforcement under PKPA.
*305 Petitioner’s conclusion is unwarranted for even if Puerto Rico’s statutory requirements for personal jurisdiction were satisfied, it does not follow that there was compliance with the PKPA or UCCJA. A basic right subsumed under the panoply of due process is notice and an opportunity to be heard. This requirement is engrafted onto every statute respecting jurisdiction. A failure to afford it renders any custody determination void for lack of personal jurisdiction. The drafters of the PKPA were sensitive to this problem for title 28 (§ 1738A, subd [e]) of the United States Code requires that reasonable notice and an opportunity to be heard be given to contestants before a custody determination can be made.
Title 28 (§ 1738A, subd [e]) of the United States Code provides: “Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.”
This section clearly and unequivocally states that reasonable notice and an opportunity to be heard is a mandatory prerequisite to the rendition of a child custody determination. Publication is an inherently unsatisfactory means of affording notice. Its suspect nature has long been recognized by the United States Supreme Court.
It noted the dubious constitutionality of notice by publication in Mullane v Central Hanover Bank & Trust Co. (339 US 306). In that case the court stated (p 314) that “[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.”[3] The court went on to say that “when notice is a person’s due, process which is a mere gesture is not due process. The means émployed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.” (339 US, at p 315.) Finally, referring specifically to notice by publication, the court said: “It *306 would be idle to pretend that publication alone * * * is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper’s normal circulation the odds that the information will never reach him are large indeed.” (339 US, at p 315.)
The necessity of notice and an opportunity to be heard is particularly cogent in child custody determinations. (See Smith v Organization of Foster Families, 431 US 816, 847.)
The Court of Appeals has described the filial bond as “one of the strongest, yet most delicate, and most inviolable of all relationships”. (Matter of Corey L v Martin L, 45 NY2d 383, 392.) It should not lightly be interfered with by the courts, and then only with a scrupulous regard for the parent’s rights.
The drafters of the UCCJA were particularly concerned with the means of notification. The commissioner’s note found at section 4 of the UCCJA (9 Uniform Laws Ann [1979 ed], Uniform Child Custody Jurisdiction Act, p 130) observes that notice and an opportunity to be heard is necessary to satisfy due process requirements, and satisfaction of these requirements is a prerequisite to the obligation of a State to recognize and enforce custody decrees of other States. Although the commissioner’s note refers only to .the procedural mechanics underlying the UCCJA, the principles expressed are applicable to the PKPA. Notwithstanding some significant differences, the PKPA generally tracks the UCCJA and specifically does so with respect to notice requirements.
We must now examine the question of whether the service by publication used by petitioner to apprise respondent of the divorce proceedings in 1973 was sufficient to satisfy due process requirements of notice and an opportunity to be heard.
*307 Petitioner was served with notice of the divorce proceeding by publication in the San Juan periodical, El Dia on the third, tenth, seventeenth and twenty-fourth days of August, 1973. This publication occurred several months after respondent had departed Puerto Rico in April of 1973 for New York, even though petitioner had actual knowledge that respondent had moved to New York well before the publication. This fact is established by documentary evidence submitted by petitioner, as well as respondent’s testimony. Appendix A to petitioner’s memorandum of law contains a copy of the August 24,1973 affidavit of publication of notice to Elba M. care of Pilar R., 153 East 118th Street, New York. It further contains a January, 1974 affidavit of “Notificación de Sentencia” to respondent also care of Pilar R., 153 East 118th Street, New York. Finally, petitioner’s Exhibit No. 7 in evidence, a letter to petitioner from respondent postmarked September, 1974, lists as its return address 118 East 153rd Street, New York.
Petitioner did not present any evidence to suggest that he had tried to serve respondent in any manner other than by publication even though he knew her actual address. In addition, respondent testified that she had written a letter to petitioner from New York in 1973, and this testimony was uncontroverted on cross-examination. Finally, there was no evidence to suggest that respondent had actual notice of the divorce proceedings prior to the entry of the default decree in October, 1973.
The court concludes that the service by publication in the Puerto Rican divorce case, under all the circumstances of that case, amounted to a mere gesture rather than notice which was reasonably calculated to apprise respondent of the pendency of the action against her, and to afford her an opportunity to present her objections. The published notice failed to satisfy constitutional due process requirements. As a result, the Puerto Rican court never obtained personal jurisdiction over respondent to allow it to make a custody determination which would be entitled to recognition and enforcement by this court under the PKPA.
ANALYSIS UNDER UCCJA
This same analysis is applicable to the issue of whether New York is required to recognize and enforce the Puerto *308 Rican decree under the UCCJA. Section 75-e of the Domestic Relations Law requires that reasonable notice and an opportunity to be heard be given to contestants before making a custody decree. Since respondent was not afforded reasonable notice and an opportunity to be heard, personal jurisdiction was not obtained over her, and the custody decree is not entitled to recognition and enforcement under the UCCJA. (See May v Anderson, 345 US 528.)
Petitioner argues that even if personal jurisdiction were not obtained over respondent before the decree was entered, respondent is estopped from raising lack of personal jurisdiction as a defense because she appeared in a Puerto Rican court in 1976 to enforce the support provisions of the decree. His argument is without merit.
An appearance subsequent to the entry of the judgment does not extend the court’s jurisdiction beyond that which existed at the time of judgment. (1 Weinstein-Korn-Miller, NY Civ Prac, par 320.01; Benadon v Antonio, 10 AD2d 40, 44.) And, even if respondent’s appearance in the Puerto Rican court in 1976 amounted to a general appearance, this court’s conclusion would remain unchanged for the issue of custody was not litigated in 1976. Therefore, the Puerto Rican court’s failure to obtain personal jurisdiction over respondent for purposes of rendering a custody decree in 1973 was not cured by respondent’s appearance in 1976.
The 1979 Puerto Rican writ of habeas corpus similarly is not entitled to recognition and enforcement. It was a mere reaffirmation of the 1973 divorce decree which was found to be defective.[4]
THE PUERTO RICAN DECREE DOES NOT CONSTITUTE A CHILD CUSTODY DETERMINATION
Even if the Puerto Rican court had obtained personal jurisdiction over respondent, and thus been in technical compliance with the PKPA and the UCCJA, the decree would still not be entitled to recognition and enforcement. Recognition and enforcement must be withheld since the *309 decree does not meet the criteria for a child custody determination.
Both the PKPA and the UCCJA speak in terms of sister State recognition and enforcement of “child custody determinations”. Since only a child custody determination is entitled to recognition and enforcement, one must determine what constitutes a child custody determination. And to do so one must start with the statutory definition but recognize that one must search beyond it. The PKPA defines “‘custody determination’” as “a judgment, decree, or other order of a court providing for the custody or visitation of a child”. (US Code, tit 28, § 1738A, subd [b], par [3].)[5]
However, one must also read into the definition the statutory statement of purpose “that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child”. (94 US Stat 3569.)
There is eminent good reason for insisting on an enlightened and expansive construction of the definition of child custody determination. The rendering of a child custody determination constitutes one of the most delicate, challenging and ofttimes frustrating responsibilities exercised by a trial jurist. Its tribulations are chronicled by Judge Bernard S. Meyer and Stephen W. Schlissel, Esq., in their eloquent and scholarly article, Difficult Area for Judges — Child Custody in Divorces (NYLJ, Sept. 15-17, 1982, p 1). More important is their discussion of the factors to be weighed in making custody awards. The sine qua non of a child custody determination is that it must be based on the best interests of the child. Implicit in this precept is the necessity that the determination of best interests be made at a plenary hearing with both sides afforded an opportunity to present their case.
The 1973 Puerto Rican decree failed to meet these essential criteria for a child custody determination. It is wholly devoid of any finding or conclusion that custody was awarded on the basis of Gary’s best interests, presumably because no evidence was adduced on that issue. To argue *310 that it should be accorded recognition and enforcement because it meets the literal definition of a custody determination found in the PKPA and UCCJA is to fail to appreciate that it falls short of New York’s minimal requirements for such a determination.
New York has long recognized the concept of best interest of the child as being the paramount consideration of the court in the resolution of child custody disputes. (Friederwitzer v Friederwitzer, 55 NY2d 89; Matter of Nehra v Uhlar, 43 NY2d 242.)
New York has concomitantly required that custody determinations be rendered after a full and plenary hearing on the merits to be entitled to recognition and enforcement. (Obey v Degling, 37 NY2d 768; Matter of Hendricks v Osborne, 64 AD2d 629; Matter of Mitchell v Mitchell, 67 AD2d 924.) This requirement goes hand-in-hand with the best interests requirement because it is only in the course of a full and plenary hearing on the merits that a court can become cognizant of the individual needs of a child, and evaluate the various factors which determine best interests. (Eschbach v Eschbach, 56 NY2d 167.)[6]
The determination of which parent should be granted custody of a child is far too momentous to be determined by nothing more than the confluence of two statutory presumptions which no longer constitute the law of Puerto Rico.
And yet there does not appear any articulated predicate for the purported 1973 award of custody of Gary to petitioner other than former sections 383 and 591 of the Civil Code of Puerto Rico.
Section 383 provided that in all cases of divorce, a minor should be placed under the care and “patria potestas” (custody) of the person obtaining the award. Section 591 provided that “patria potestas” belonged in the first instance to the father.
The Commonwealth manifested sensitivity and wisdom when it amended these statutes in 1976. Section 383 was *311 amended to require that the award of care and “patria potestas” be based upon which parent is best fitted to serve the best interest and welfare of the minor. Section 591 was amended to provide that the “patria potestas” belongs jointly to both parents.
The Puerto Rican custody decree was not based on the child’s best interests, and therefore was not a “child custody determination” entitled to enforcement and recognition. The statutes under which the custody award was made required custody to be awarded to the person obtaining the divorce, with a presumption that “patria potestas” belong in the first instance to the father.
Petitioner argued that notwithstanding the imperatives of the then existing statutes, the Puerto Rican courts could still award custody based upon the child’s best interests. While this point may be valid in the abstract, it is irrelevant because best interests were not considered by the Puerto Rican court in the instant matter. Neither Gary nor the respondent had appeared at the hearing where the Puerto Rican court considered the question of custody. In fact, both had been in New York for approximately six months before the hearing was even held. Moreover, the Puerto Rican court apparently failed to receive evidence concerning Gary’s best interests. The decree itself makes no mention of it being based on Gary’s best interests and, in fact, recognized that Gary was living with respondent, and ordered petitioner to pay $10 per week for child support to respondent.
The Puerto Rican court’s award of child support to respondent on the basis of Gary living with her makes it unclear that Puerto Rico awarded custody solely to petitioner. The court recognized that the child was with respondent when it awarded child support to her. Implicit in this ¿ward was its approval of the respondent’s continued physical custody of Gary. To reason otherwise would produce the anomalous result of permitting respondent the benefit of her own wrong doing, an undertaking violative of the basic legal maxim to that effect.
This court concludes that the Puerto Rican decree which approved de facto custody by respondent, while awarding *312 de jure custody to petitioner constitutes an award of joint custody with physical custody reposing in respondent.
The court declines to follow the Law Guardian’s suggestion that if the court were to find the Puerto Rican decree a child custody determination entitled to recognition it could nevertheless assert jurisdiction to modify it. Rather, it rests its determination of custody on the lack of a valid child custody determination entitled to recognition and enforcement.
BEST INTERESTS DETERMINATION
Petitioner, a resident of Puerto Rico, invoked the jurisdiction of this court and a full and thorough plenary hearing was conducted.
The evidence established that respondent has unremittingly provided Gary with a continuity of emotional, material and financial support for the past eight and one-half years. As a result of the nurturing and supportive environment provided by respondent, Gary is healthy, well adjusted and functioning satisfactorily in school and in his home.
The court interviewed Gary in camera (Matter of Lincoln v Lincoln, 24 NY2d 270), and was understandably told that Gary wishes to remain with his mother. He has no desire to live with his father, a stranger whom he has not seen since he was an infant.
Under these circumstances it is in Gary’s best interests to award custody to respondent.
Petitioner is a stranger to Gary, and has shown only the most sporadic interest in him over a protracted period of time. For example, he has never sent him Christmas or birthday cards or gifts or otherwise communicated with him.
While the parties have not addressed themselves to visitation it would have to take place under strict supervision in respondent’s home.
Since petitioner lives in Puerto Rico, it would be impractical to make a specific order, and the court will refrain from doing so absent a specific request from petitioner’s counsel.
*313 Petitioner’s request for attorney fees pursuant to section 75-p of the Domestic Relations Law is denied.

. Petitioner’s former attorney had been indicted in an unrelated matter, and was subsequently disbarred.

. There was conflicting testimony as to whether Gary had visited his father for a brief period in August, 1975. Petitioner testified that Gary went to Puerto Rico due to his adverse reaction to the New York climate. Respondent disputed this claim.

. This formulation has been specifically adopted in New York. (Silverstein v Minkin, 49 NY2d 260.)

. Had there been a hearing on the question of custody with evidence adduced on the question of the best interests of the child, this court would reach a different conclusion.

. The UCCJA defines custody determination in almost identical terms. (Domestic Relations Law, § 75-c, subd 2.) It is susceptible of the same analysis.

. This requirement has recently been held to be applicable to recognition and enforcement under the PKPA as well as the UCCJA. (Virginia E. E. v Alberto S. P., 110 Misc 2d 448, 456-457.)