OPINION OF THE COURT
Paula J. Hepner, J.
On December 18, 1990 an order of the Supreme Court of *631 Ontario, dated November 27, 1990, was filed in this court by the petitioner, pursuant to section 75-p of the Domestic Relations Law of New York State, which order granted petitioner temporary custody of the parties’ two children, a son and a daughter, and directed their return to Canada.
A warrant was issued for the respondent to produce the children and before the end of the day, the respondent and the two children were before this court. Pursuant to section 1022 of the Family Court Act, the children were remanded to the temporary custody of the Commissioner of Social Services of the City of New York to assure their continued presence in this jurisdiction.[1]
On December 19, 1990 the parties and their attorneys appeared before this court and entered into a stipulation by which the children would be released from foster care and the petitioner would be afforded visitation pending the outcome of these proceedings.[2]
The petitioner’s application for enforcement of the Canadian decree is made pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (51 Fed Reg 10498 [1986], reprinted in USCS Conventions, 1991 Cum Supp, at 230 et seq. [hereinafter cited as Hague Convention]), and, according to article 16 of the Hague Convention, this court advised the parties that it lacks jurisdiction to adjudicate the merits of the underlying custody dispute. Counsel for the parties were given an opportunity to submit briefs on whether the petitioner can prove that the children were "wrongfully removed” from Toronto, Canada, where they resided from birth until October 5, 1989 and whether, assum *632 ing the petitioner establishes "wrongful removal,” the respondent can prove that any of the statutory exceptions contained in the Hague Convention apply, and thus this court is not bound to order the return of the children to Canada.
HISTORY OF THIS MATTER
The parties are both Canadian nationals. Two children were born of the marriage. Owing to marital difficulties, the parties separated and entered into a separation agreement which gave custody of their son, the only child born at that time, to respondent and provided regular visitation between the petitioner and the child. The separation agreement further provided that the respondent "shall make [the son] available [to the petitioner] within the Metropolitan Toronto vicinity.”
Their daughter was not born at the time of the separation agreement and, therefore, it is silent as to her. This court is not aware of any custody or visitation agreement reached between the parties subsequent to her birth. Nor has the respondent offered any evidence of a court order giving her custody of the daughter. After the daughter’s birth, the petitioner applied for an interim order from the secular courts of Ontario preventing the respondent from removing the children from Ontario and from obtaining passports for them. On October 5, 1989 the Supreme Court of Ontario issued the orders the petitioner requested.
On or about October 5, 1989, the respondent and the children left Ontario. Petitioner followed the procedures set forth in the Hague Convention to secure the return of the children. On December 5, 1989, the Ontario Ministry of the Attorney General forwarded an application for the return of the children to the United States Department of State, the agency designated as the "central authority” pursuant to the Hague Convention with responsibility for carrying out its provisions.
Subsequently, the Department of State communicated with the New York State Clearinghouse for Missing and Exploited Children. It is believed that this agency contacted the New York City Police, who verified the children’s residence in Brooklyn.
In August 1990 the petitioner returned to the Supreme Court of Canada for an interim order granting him temporary custody of both children. On September 21, 1990 on inquest, the Supreme Court of Ontario made a finding that the respondent "wrongfully and improperly removed the said children *633 from this jurisdiction [Ontario] and evaded or refused service, although duly served with the Order of this Court, dated October 5, 1989.”
On November 27, 1990, the Supreme Court of Ontario issued a similar order, but adding that the respondent is "currently withholding the said children from [the petitioner] who is entitled to custody and access to the said children.” On December 18, 1990, petitioner filed the instant motion for enforcement of the November 27,1990 order.
CONCLUSIONS OF LAW
The Hague Convention was adopted by the signatory States "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.” (51 Fed Reg 10498 [1986].) The United States and Canada are signatories to the Hague Convention. The United States Congress enacted procedures to implement the Hague Convention in the United States in 1988 by adopting the International Child Abduction Remedies Act (42 USC § 11601 [hereinafter cited as ICARA]).
Under article 3 of the Hague Convention, "wrongful removal” is defined as the "removal or the retention of a child * * * in breach of the rights of custody attributed to a person * * * under the law of the State in which the child was habitually resident” providing that "at the time of removal or retention those rights were actually exercised * * * or would have been so exercised but for the removal.” "Wrongful removal,” as defined in ICARA, includes "a removal or retention of a child before the entry of a custody order regarding that child.” (42 USC § 11603 [¶] [2].) This court finds that both children were "habitually resident” in Ontario immediately prior to their removal and that the petitioner was exercising his rights, as to his son, and would have exercised his rights, as to his daughter, but for her removal.
Article 3 of the Hague Convention further provides that rights of custody "may rise * * * by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.” Under the ICARA, "full faith and credit” shall be accorded by the court of the United States "to the judgment of any other [contracting State’s] court ordering or denying the return of a *634 child, pursuant to the Convention, in an action brought under this Act.” (42 USC § 11603 [g].)
Finally, in determining whether a child shall be returned, the Hague Convention contains specific provisions which govern the decision-making process. Article 12 provides that when a proceeding for the return of the child is commenced less than one year from the date of the wrongful removal, the court shall order the return of the child. If the proceeding for the return of the child is commenced more than one year after the wrongful removal, the court shall order the return of the child "unless it is demonstrated that the child is now settled in its new environment.” Article 13 of the Hague Convention provides that a requested State (e.g., New York) is bound to order the return of the child unless the respondent can show: (a) that the petitioner "was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention;” or (b) "there is a grave risk that [the child’s] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.” (51 Fed Reg 10499-10500 [1986].)
The ICARA establishes which party has what burden of proof with respect to these issues. It is the petitioner’s burden to show, by a preponderance of the evidence, that the removal was wrongful. (42 USC § 11603 [e] [1].) The respondent has the burden of showing, by clear and convincing evidence, that the child should not be returned because of the exceptions set forth in article 13 (b) or article 20. (42 USC § 11603 [e] [2] [A].) The respondent has the burden of showing, by a preponderance of the evidence, that the child should not be returned because of the exceptions set forth in articles 12 and 13 (a). (42 USC § 11603 [e] [2] [B].)
The legal analysis of the circumstances of this case begins with the laws of the Province of Ontario. This court takes judicial notice of Children’s Law Reform Act (Ontario Rev Stat, ch 68, as amended), part III (custody, access and guardianship). Section 20 (1) thereof provides that "the father and the mother of a child are equally entitled to custody of the child.” Section 20 (7) provides that "[a]ny entitlement to custody or access * * * is subject to alteration by an order of the court or by separation agreement.”
The evidence provided to this court shows that the parties entered into a separation agreement in April 1989, which gave *635 the respondent custody of their son and the petitioner visitation with the child. Therefore, it appears to this court that the petitioner’s statutory right to custody of their son was suspended by virtue of the separation agreement. There was no such formal agreement for their daughter. Thus, with respect to her, the petitioner and respondent had an equal right to custody.
According to the April 6, 1989 separation agreement, contrary to respondent’s assertion, her ability to relocate her residence with the children outside the metropolitan Toronto area was restricted.
In its order of September 21, 1990, the Ontario Supreme Court found that respondent was duly served with the October 5, 1989 order and nonetheless left the country. Based on the foregoing, this court finds that the respondent acted in contempt of the Supreme Court’s order of October 5, 1989 by leaving the country.
Respondent’s contention that the petitioner is not entitled under the Hague Convention to have their son returned, because he only had visitation ("access”) rights and not custody, might have some merit but for the respondent’s contemptuous conduct, and the subsequent orders of the Supreme Court of Ontario which give temporary custody of both children to the petitioner. Moreover, respondent’s argument overlooks the fact that their daughter was not included in the provisions of the separation agreement. Therefore, the petitioner had an equal right to custody of their daughter when the respondent left Ontario. Under section 11603 (f) of ICARA, this court can find there was a "wrongful removal” in the absence of any formal declaration of custody.
This court finds that the Ontario Supreme Court’s orders of September 21, 1990 and November 27, 1990 constitute a declaration that the removal or retention of the children was wrongful within the meaning of article 3 of the Hague Convention. Accordingly, this court gives full faith and credit to the orders of the Supreme Court of Ontario, including the findings made therein, and holds that the petitioner has met his burden of showing, by a preponderance of the evidence, that the removal of these children from Ontario was "wrongful.”
The remaining question before the court is whether this court must order the return of the children to Ontario. The only exceptions which respondent seeks to invoke are the *636 exceptions contained in articles 12 and 13 (a). Pursuant to article 12, respondent alleges that the children should not be returned to Ontario because the petitioner delayed commencing this proceeding for more than a year after the wrongful removal, and in the interim they are now "settled in [their] new environment.” Pursuant to article 13 (a), respondent alleges that the petitioner’s delay in commencing these proceedings amounts to his acquiescence to their removal and retention.
The respondent further contends that she and the children have "established a home, friendships, ties to the community and a way of life that affords stability and meaning to them.” These children are ages 3 and almost IVz. They are not yet involved in school, extracurricular, community, religious or social activities which children of an older age would be. The children have not yet formed meaningful friendships. The respondent does not allege the children attend nursery school, prekindergarten, religious services or instruction. She offers no evidence to show that despite their young ages they have already established significant ties to their community in Brooklyn. Respondent’s personal need to be in Brooklyn so she can be close to Boro-Park’s "population of available Orthodox Jewish men” and search for a new husband does not satisfy her burden of proof. This court believes the respondent has not met the burden of showing, by a preponderance of the evidence, that the children are so settled in their new environment that they should not be uprooted and returned to Ontario. Beyond this, respondent has not rebutted the inference that these children continue to have substantial, meaningful connections to Ontario. Specifically, the children have numerous relatives (maternal and paternal) living in Ontario; friends and acquaintances of both parents reside there; there is a sizeable Orthodox Jewish community in Toronto in which the children can become involved; and the respondent continues to maintain an apartment in Toronto.
The Hague Convention prescribes a detailed procedure to be followed by persons seeking the return of children wrongfully removed. Under article 8, the processing must be commenced by application to the Central Authority of the country where the children are believed to be. Upon receipt, the Central Authority must ascertain the location of the children and work toward their voluntary return. The fact that the petitioner suspected he knew where the children were residing at *637 the time of his application to the Central Authority in December 1989 does not constitute "acquiescence” on his part. The Hague Convention was adopted to deter "self-help” and contains no procedure whereby the petitioner could bypass its provisions. Under the circumstances presented herein, this court does not find the petitioner’s proceeding to return the children was untimely nor does this court find he acquiesced in their removal.
Finally, respondent is not correct in asserting that this court is obligated to conduct a de nova hearing on the issues of custody and visitation. By filing his application to enforce the decrees of the Supreme Court of Ontario, this petitioner, unlike the petitioner in Sheikh v Cahill (145 Misc 2d 171 [Sup Ct, Kings County 1989]), did not submit himself to this jurisdiction so that this court could make a de nova custody determination.
Having found that the respondent’s removal of the children was wrongful, that the respondent has not met her burden of proving that one of the exceptions bars the return of the children to Ontario (Palle v Palle, 16 Fam L Rptr 1262 [Ill Cir Ct, Cook County 1990] [no showing of grave risk of physical or psychological harm or an impending intolerable situation]; Becker v Becker, 15 Fam L Rptr 1605 [NJ Super Ct, Morris County 1989] [no showing of grave risk of psychological harm]; Navarro v Bullock, 15 Fam L Rptr 1577 [Cal Super Ct, Placer County 1989] [no showing that the children were exposed to psychological harm]), this court concludes that both children should be returned to Ontario forthwith, where a preliminary hearing may be held, in accordance with the Ontario Supreme Court’s order of September 21,1990, to determine the issues of interim custody and visitation. The temporary order of protection and the temporary orders of custody are discontinued. The respondent’s neighbor is directed to release the children to the petitioner, who has temporary custody of the children under orders of the Supreme Court of Ontario. The petitioner shall immediately return the children to the Province of Ontario and immediately advise the Supreme Court and the Central Authority upon their return.
Upon release of the children to the petitioner, counsel for the respondent may return to her the passports and money he has been holding in escrow.

. When the children were returned on the warrant and this court was faced with the very real issue of how to protect the children and assure they would not be removed from New York, either by the father or the mother, the only resource immediately available to this court was the Commissioner of Social Services.

. After conducting a hearing on the limited question of where the children could reside pending the resolution of these proceedings, a stipulation was entered into by the parties and approved by the court. Pursuant thereto, the children were to be released to the temporary, protective custody of a neighbor who was directed not to permit the mother or father to remove the children from her home and to supervise all visitation between the children and their mother and father. To secure the children’s presence in the neighbor’s home and the respondent’s presence in court, the respondent deposited $10,000 in cash, to be held in escrow, subject to forfeiture to the petitioner if she and/or the children fled the jurisdiction. In addition, the passports of the respondent and both children were surrendered and placed in escrow.