**In re the Application of Klaus KLAM, Petitioner,**

v.

**Renate KLAM, Respondent.**

**No. 92 CV 1977 (ERK).**

United States District Court, E.D. New York.

Aug. 11, 1992.

Siegel, Sommers & Schwartz, New York City, for petitioner.

No appearance for respondent.

### ORDER

KORMAN, District Judge.

The thorough and reasoned recommendation of Magistrate Ross is adopted and petitioner's application for provisional relief by issuance of a "warrant" is denied. The "adoption of this report and recommendation would deny solely petitioner's request for interim relief, thus permitting him to effect proper service of the petition and proceed with his suit under ICARA...." Report & Recommendation, p. 207, n. 5.

SO ORDERED.

### REPORT and RECOMMENDATION

ROSS, United States Magistrate Judge:

By papers filed July 3, 1991, petitioner, Klaus Klam, a German citizen, petitioned the court for "a warrant in lieu of writ of habeas corpus," presumably a request that the court, as a provisional remedy, "arrest" his minor children, Philip and Kristina, who were then living with their mother, respondent, Renate Klam, in East Hampton, Long Island, New York, so that they could be brought before the court for proceedings pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Convention) (51 Fed.Reg. 10490) and its implementing legislation, the International Child Abduction Remedies Act (ICARA) (42 U.S.C. § 11601 *et seq.*). The Convention and ICARA provide a procedure for securing the return to their country of residence children who have been abducted or wrongfully retained outside that country. By order filed July 24, 1991, Judge Korman denied the application without prejudice, and judgment was entered accordingly, on July 26, 1991.

Nine months later, on April 24, 1992, petitioner refiled the identical papers in support of the identical request, except this time purporting to serve respondent by mailing the petition to Caleca & Towner, Esqs., asserted to be "Attorneys for Respondent." Judge Korman has referred for report and recommendation this most recent petition and request for provisional relief. For the following reasons, I recommend that the application for a warrant be denied.

### FACTS

The petition and appended declaration (Ex. E to the petition) allege that petitioner

and respondent, Klaus and Renate Klam, were married in Berlin, Germany on September 18, 1982, separated in East Hampton, New York on September 13, 1990 and are the parents of two children, Philip and Kristina, born February 7, 1983 and January 4, 1985, respectively. The petition alleges, without further support or elaboration: that "Philip Klam and Kristina Klam are being illegally held in custody, confinement or restraint by Renate Klam at 81 Dunemere Lane, East Hampton, County of Suffolk, State of New York" (¶ 4); that "[a]s of December 1990, the respondent wrongfully detained the children within the meaning of Article 3 of the Convention and has since failed to return the children to petitioner or their habitual residence in Germany" (¶ 6); and that "petitioner believes that the children will be carried out of the jurisdiction of the Court or will suffer irreparable injury unless a warrant is issued" (¶ 2).

The petition also appends (as Ex. B) and makes extensive reference to the decision of Justice John Dunn, Supreme Court of the State of New York, County of Suffolk, dated June 14, 1991 in *Renate Klam v. Klaus Klam,* Index No. 18827–90. In that case, Renate Klam had brought suit for divorce against Klaus Klam and, according to the declaration (Ex. E at ¶ 3), also sought custody of the children. Klaus moved to dismiss the action, asserting absence of jurisdiction on the ground that Renate failed to meet the one year residency requirement in New York State required by N.Y.Dom.Rel.Law § 230(3) (McKinneys 1986) prior to commencing the matrimonial action.[1] Justice Dunn agreed and dismissed the suit. In so doing, he made various factual findings, some of which are noted in the petition, including, *inter alia:* that both Renate and Klaus Klam are German citizens; that Klaus purchased a residence in East Hampton, New York, in 1983, to provide a home base permitting Renate to join him on business trips to the New York area; that Renate's visit to Germany from September of 1989 until May of 1990 constituted objective evidence that she was reasserting her German residence; and that during a period that Klaus Klam was incarcerated in connection with Renate's bringing of criminal charges against him, Renate "invaded" Klaus's Swiss bank account by making certain misrepresentations to bank officials.

Also referred to in the petition (and annexed as Ex. C) is what petitioner purports to be excerpts from an affidavit submitted by Renate in the divorce action. Among the highly truncated excerpts listed on the exhibit, Renate is alleged to have attested: "I have been forced to sell books in violation of the Court's Order simply to exist . . . .".

Finally, referred to in the petition (and annexed as Ex. B) is a July 3, 1991 letter from John Markey, Cousular Officer, Child Custody Unit, Office of Citizens Consular Services of the Department of State, advising that, under the Convention, the German Central Authority had submitted an application on behalf of Klaus Klam for the return of the two children; and that Ronald Sussman, Esq., representing Mr. Klam, would provide the court with "documentation received from the German Central Authority." No such documentation has been submitted.[2]

In the declaration annexed to the petition (Ex. E), petitioner's attorneys advise (at ¶ 3) that petitioner is a party to a custody proceeding pending in Berlin, Germany— *Klaus Klam v. Renate Klam.* The declaration does not recite any details concerning the status of that proceeding.

On April 28, 1992, four days after the filing of the most recent petition, Andrew Towner, Esq. of Caleca & Towner, on whom Sussman served the petition purportedly as attorneys for respondent, wrote to Sussman with a copy to the court. Towner advised that he had "not been retained" and is "not authorized to represent Renate

---

1. However, Klaus did not raise his rights under the Convention and seek the return of his children.

2. Today, July 2, 1992, the Department of State submitted a copy of Klam's Request for Return under the Convention and supporting affidavit, both dated March 1991.

Klam in this matter." Accordingly, he asserted: "I am not authorized to accept service on this matter on behalf of Mrs. Klam at this time." Towner also reminded Sussman that, as he had previously advised, the court in the German custody litigation had "issued a decision dated October 2, 1991 denying Mr. Klam's motion for custody and held that the status quo (custody with Mrs. Klam) will remain in effect pending a final determination of the action." Petitioner did not respond to this letter, nor has he provided the court with any evidence that service of the petition has been effected by any additional means.

### DISCUSSION

The Convention and its implementing legislation, ICARA, were designed "to protect children from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence ..." 51 Fed.Reg. 10498 (1986). Under Article 3 of the Convention, "wrongful removal" is defined as "the removal or the retention of a child in breach of the rights of custody attributed to a person under the law of the State in which the child was habitually a resident ... providing that at the time of removal those rights were being actually exercised." While the ultimate merits of the custody issue are not adjudicated in proceedings pursuant to the Convention and ICARA, which are limited, rather, to the determination of whether the child was wrongfully retained or abducted (42 U.S.C. § 11601(a)(4), 51 Fed.Reg. 10500, Article 19), petitioner must establish that the removal or retention was "wrongful," meaning in breach of the law of the child's habitual residence—here, assertedly Germany. 42 U.S.C. § 11603(e)(1)(A), 51 Fed. Reg. 10497, Article 3.

To prevail in an ICARA proceeding, a petitioner must prove by a preponderance of the evidence that the child has been "wrongfully removed or retained within the meaning of the Convention" (51 Fed. Reg. 10499, Article 3, 5), and the respondent bears the burden of proving exceptions under the Convention. 42 U.S.C. § 11603(e); 51 Fed.Reg. 10499, Articles 12, 13; 51 Fed.Reg. 10500, Article 20. One such exception concerns petitions brought more than one year after the child was assertedly illegally removed or retained, as is the case here. In those circumstances, if respondent establishes that the child is settled in the current environment, the court may order that the child remain pending resolution of the custody issue. 42 U.S.C. § 11603(e)(2)(B); 51 Fed.Reg. 10499, Article 12.

The statute provides that "[n]otice of an action [under ICARA] ... shall be given in accordance with the applicable law governing notice in interstate child custody proceedings." 42 U.S.C. § 11603(c). Such proceedings are governed by the Uniform Child Custody Jurisdiction Act (UCCJA), N.Y.Dom.Rel. §§ 75a–z (McKinneys 1988), (9 U.L.A. 123 (1988), and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. Both Section 4 of the UCCJA and 28 U.S.C. § 1738A(e) (the PKPA) mandate that before a determination is made "reasonable notice and an opportunity to be heard shall be given" to the parties. *See* N.Y.Dom.Rel. § 75–e. "As to persons in the forum state, the general law of the state applies." 9 Uniform Laws Annotated 208, comment. The PKPA notice provisions are substantially similar to the UCCJA. *In the Matter of Felix C.*, 116 Misc.2d 300, 455 N.Y.S.2d 234 (Fam.Ct. Bx.Co.1982). To satisfy due process, these statutes call for a plenary hearing at which both sides are heard regarding the best interests of the child. *Id.* 116 Misc.2d at 309, 455 N.Y.S.2d at 240.

Here, petitioner's affidavit of service attests that, in commencing the instant action, service was made by mailing the Petition to "Caleca & Towner, Esqs., Attorneys for Respondent." Since the petition initiated this lawsuit, however, Caleca & Towner are not attorneys of record in this proceeding; and petitioner has not responded to Towner's letter advising Sussman and the court that Towner's firm has not been retained to represent respondent in this action nor is the law firm authorized to accept service of process on her behalf. Assuming *arguendo* that the law firm rep-

resented respondent in the long-ago terminated state court matrimonial proceeding, neither the Federal Rules of Civil Procedure nor New York's Civil Practice Law and Rules authorize service of process in this fashion. Nor did any court order precede the petition authorizing such service. Accordingly, the current application, like the application previously denied by Judge Korman, is an *ex parte* one, since no effective service has been made.

■ The sole issue posed by the petition is thus the propriety of granting the relief sought, "a warrant in lieu of a writ of habeas corpus", on a *ex parte* basis, in light of the showing made in petitioner's papers. ICARA's provision for provisional remedies, 42 U.S.C. § 11604(a), authorizes the court to take measures "under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a). However, no court may "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604(b).

At the outset, there is authority in New York that, at least under the circumstances of the given case, the due process requirements of the PKPA and the UCCJA are not met by an *ex parte* order for temporary relief. *Sherry Ann F. v. Bennett S.*, 131 Misc.2d 854, 859, 502 N.Y.S.2d 383 (Schoharie Co.1986) (holding that "[t]he legal and jurisdictional, as well as the practical effect of the respondent father's unilateral removal of the child from California ... [was] dissipated by the inaction, if not acquiescence, on the part of the mother, and the ex parte order [obtained in California] sought to be enforced [in New York] is lacking in fundamental due process of law, and was not obtained in conformity with the provisions of the" PKPA and the UCCJA). *See also Giddings v. Giddings,*

228 N.W.2d 915 (N.D.1975) (stating that in light of the notice provisions of the UCCJA, it was error for the court below to grant ex parte relief). There is also authority in New York, however, that although a "custody determination, which may drastically affect a child's welfare, ordinarily should not be based on an ex parte application", "a temporary custody determination [may be made] in an ex parte order to show cause" upon "a showing of extraordinary circumstances." *Alberts v. Alberts,* 168 A.D.2d 1004, 564 N.Y.S.2d 945 (4th Dept.1990). Assuming *argendo* that an ex parte application is not prohibited and the latter standard is applicable, the required showing has not been made here.

■ The petition makes only the most conclusory allegation of unlawful detention and unexplained "belie[f] that the children will be carried out of the jurisdiction of the Court or will suffer irreparable injury unless a warrant is issued." Nothing in the petition or its attachments support the assumption that respondent, who has concededly lived in East Hampton with her children for a year and a half in a home the parties purchased nine years ago, will act to escape the jurisdiction of the court pending a proceeding under ICARA.[3] Notably, petitioner waited some eight months after respondent most recently took up residence in New York with her children, in late 1990, to file his first petition under ICARA; and after that petition was dismissed without prejudice, he waited an additional nine months before filing the instant petition, which is virtually a carbon copy of the earlier one. The prolonged lapse of time, unaccompanied by any explanation, itself belies the contention that provisional relief is warranted. Indeed, if Towney's letter, which has not been contested by petitioner, is correct, even the German court, in which both parties are represented, reached the conclusion that pending the completion of that proceeding, the children should remain

**3.** Petitioner could have sought return of his children initially, when respondent brought the matrimonial action in state court. Assertion of rights under the Convention is not an acknowledgment of jurisdiction permitting the New

York Court to determine custody. *David S. v. Zamira S.,* 151 Misc.2d 630, 637, 574 N.Y.S.2d 429, 433 (Fa.Ct. Kings Co.1991), *aff'd,* N.Y.L.J., Feb. 27, 1992 at 23, col. 2 (2d Dept.).

in New York in the custody of their mother, the respondent here.

Further, while Justice Dunn's decision concludes that respondent's conduct cannot be characterized as blameless, that opinion cites no evidence warranting immediate removal of the children from her custody. There is no evidence that respondent physically or emotionally abused the children, or acted in an way justifying the relief sought.[4] According, the request for a warrant should be denied.

## CONCLUSION

For the foregoing reasons, I recommend that petitioner's application for provisional relief by issuance of a "warrant" be denied.[5]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.Pro. 6(a), 6(e); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989).

Dated:   July 2, 1992.

---

**4.** Although, under New York State law, custody is determined in a habeas corpus proceeding, N.Y.Dom.Rel.L. § 70 (McKinnys 1988), caselaw indicates that the courts sometimes entertain warrant applications at the outset of such proceedings. *See, e.g., In the Matter of Sherry Ann F. v. Bennett S.*, 131 Misc.2d 854, 502 N.Y.S.2d 383. However, as indicated above, assuming the availability of the remedy, it is not warranted here.

**5.** While the Court's adoption of this report and recommendation would deny solely petitioner's

request for interim relief, thus permitting him to effect proper service of the petition on respondent and proceed with his suit under ICARA, counsel would be well-advised to first ascertain whether Towney was correct in his assertion that the German court has already determined that, pending the conclusion of that custody proceeding, the children are to remain with respondent in New York. If so, proceeding with the instant ICARA petition could subject petitioner and his counsel to sanctions pursuant to Rule 11, Fed.R.Civ.P.