ARTHUR L. PEIRSON et al., as Trustees, Appellants, *v.*
LLOYDS FIRST MORTGAGE COMPANY, Respondent.

(Argued October 20, 1932; decided November 22, 1932.)

*Samuel J. Levinson* and *Frank Weinstein* for appellants. Defendant is estopped to deny that it holds the money as an indemnity fund deposited with it by plaintiffs to secure the performance by them of the obligations specified in the security agreement. (*Bushnell* v. *Chautauqua County Nat. Bank*, 74 N. Y. 290; *Haas* v. *Altieri*, 2 Misc. Rep. 252; *Mercantile Trust Co.* v. *Atlantic Trust Co.*, 86 Hun, 213; *People* v. *Brown*, 55 N. Y. 180; *Eytinge & Co.* v. *Atlantic Transport Co.*, 160 App. Div. 635; *Mullins* v. *Chickering*, 110 N. Y. 513; *Western Transportation Co.* v. *Barber*, 56 N. Y. 544; *Pepper* v. *James*, 7 Ga. App. 518; *Hampton* v. *Swisher*, 4 N. J. L. 74; *Osgood* v. *Nichols*, 5 Gray, 420.) All damages of the party intended to be secured having accrued and become complete prior to the commencement of the action, plaintiffs became entitled to the return of their security deposit less so much thereof, if any, as is applicable to compensate for such damages. (*D'Appuzo* v. *Albright*, 76 N. Y. Supp. 654; *Degnario* v. *Sire*, 34 Misc. Rep. 163; *Matter of Interborough Consol. Corp.*, 288 Fed. Rep. 334; *Michaels* v. *Fishel*, 169 N. Y. 381; *Scott* v. *Montells*, 109 N. Y. 1; *Seidlitz* v. *Auerbach*, 230 N. Y. 167; *Chaude* v. *Shepard*, 122 N. Y. 397; *Cannon* v. *Fifty-sixth Street Garage*, 45 Fed. Rep. [2d] 110; *Caesar* v. *Rubinson*, 174 N. Y. 492; *Sutton* v. *Goodman*, 194 Mass. 389; *Hall* v. *Middleby*, 197 Mass. 485; *Carson* v. *Arvantes*, 27 Col. 77; *Meagher* v. *Eilers Music House*, 77 Ore. 70; *Matter of Frey*, 26 Fed. Rep. [2d] 472; *Johnson* v. *Englestein*, 236 Ill. App. 215; *Hecklan* v. *Hauser*, 71 N. J. L. 478; *Cunningham* v. *Stockton*, 81 Kan. 780; *Rosenfeld* v. *Aaron*, 248 N. Y. 437; *Bushnell* v. *Chautauqua Co. Nat. Bank*, 74 N. Y. 290.)

*Joseph A. Seidman* for respondent. Upon the stipulation of the parties for a directed verdict, the Appellate

Division had the power and it was its duty to reverse on the law and to direct judgment for defendant without new findings on the ground that the trial court's direction for judgment was contrary to the law of the case as settled on defendant's first appeal and plaintiffs are precluded from claiming error in the law of the case or to now urge a new theory. (*Cluff* v. *Day*, 141 N. Y. 580; *Porter* v. *International Bridge Co.*, 79 App. Div. 358; *Silver* v. *Park Lex Holding Corp.*, 222 App. Div. 40; *Phelps Stokes Estates* v. *Nixon*, 222 N. Y. 93; *Snider* v. *Snider*, 160 N. Y. 151; *People* v. *Dalton*, 159 N. Y. 235; *Racine* v. *Morris*, 201 N. Y. 240; *Porter* v. *Municipal Gas Co.*, 220 N. Y. 152; *Lebright* v. *Gentzlinger*, 232 App. Div. 274; *Paine* v. *Geneva R. R. Co.*, 115 App. Div. 729; *Van Alstine* v. *Standard Light Co.*, 116 App. Div. 100; *Ford* v. *Wanamaker*, 165 App. Div. 284; *Trulock* v. *King*, 216 App. Div. 439.) There is no evidence to support the conclusions of law or fact of the trial court and the findings so made being insufficient to sustain the judgment reversed, the judgment for defendant should be affirmed. (*Jerome* v. *Queen City Cycle Co.*, 163 N. Y. 351; *Gannon* v. *McGuire*, 160 N. Y. 476; *Canda* v. *Totten*, 157 N. Y. 281; *Fellows* v. *Northrop*, 39 N. Y. 117; *Matter of Case*, 214 N. Y. 199; *Pollock* v. *Pollock*, 71 N. Y. 137; *Dougherty* v. *Lion Fire Ins. Co.*, 183 N. Y. 302; *Meriden Gravure Co.* v. *Bedell*, 232 App. Div. 454; *Dearstine* v. *Dunckel*, 223 App. Div. 795; *Spence* v. *Ham*, 163 N. Y. 220; *Cawley* v. *Weiner*, 236 N. Y. 357; *Kelso & Co.* v. *Ellis*, 224 N. Y. 528; *Avery* v. *Willson*, 81 N. Y. 341; *Van Clief* v. *Van Vechten*, 130 N. Y. 571; *Lewis* v. *Mott*, 36 N. Y. 394; *Thompson* v. *St. Nicholas Bank*, 113 N. Y. 325; *Jones* v. *Seaman*, 133 App. Div. 127.) Plaintiffs, if they acquired any right to demand of defendant the performance of its agreement to loan whatever remained to be advanced under the building loan contract, acquired such right by virtue of the assignment of the mortgagor's right under the contract and was subject to the terms and conditions

therein contained. (*Miller* v. *Schloss*, 218 N. Y. 400; *Dougan* v. *Champlain Transp. Co.*, 56 N. Y. 1; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *The Baron Innerdale*, 93 Fed. Rep. 492; *Spence* v. *Ham*, 163 N. Y. 220; *Chambers* v. *Lancaster*, 3 App. Div. 215; 160 N. Y. 342.)

CRANE, J.   The Hurtjam Realty Corporation was the owner of real property in Jamacia, Queens county, N. Y., on which it erected a theatre and office building, procuring for this purpose a building loan of $500,000 from the defendant.   The theatre as erected is known as the Shubert Theatre.   The owner had entered into a building contract dated January 7, 1928, with a corporation known as Perri Contracting Company, Inc., for the erection of this building and the installation and equipment of the theatre for a total contract price of $472,500. The loan made by the defendant to the owner was pursuant to a building loan agreement between the parties and secured by a mortgage on the property, both dated January 30, 1928.   Before the completion of the theatre the general contractor became insolvent, defaulted in payment due the subcontractors, with the result that they quit work in October or November, 1928.   Thereupon the owner, general contractor and nearly all the subcontractors entered into a trust agreement under which the plaintiffs were appointed trustees for the subcontractors.   According to these arrangements the subcontractors agreed to complete so much of the said building contract as was left undone by the general contractor and the plaintiffs as trustees were to receive for them from the owner the balance of $167,000 that was still to be paid by the owner under said building contract.

At this time there was more than $67,000 to be advanced on the building loan to the owner, which presumably would go to these trustees for the workmen. The defendant mortgagee was not a party to the owner's

agreement with the subcontractors but knew about it. The $67,000 would not pay the $167,000 to become due so the arrangement was that the trustees would receive the $67,000 in cash from the defendant and take a second mortgage of $100,000 on the property executed by the owner and guaranteed by three responsible persons. Such mortgage was executed and the owner assigned to the plaintiffs his right to the first $67,000 to be received by him from the defendant on the building loan. Advances on the $67,000 were made subsequently to pay for the work and labor as it progressed until about December 27, 1928, when the subcontractors wanted more money and the defendant advanced the last payment under these circumstances. The owner was anxious to open the theatre for regular business on New Year's Eve, December 31, 1928, and had advertised such date for the first performance. A meeting was arranged at the defendant's office on the 28th of December between the owner, the defendant's representative, and the trustees, which resulted in the defendant advancing to the owner the entire balance of $23,733.36 that had not as yet been advanced on the $500,000 building loan. With this payment the entire amount secured by the mortgage had been loaned to the owner. This sum, represented by check, was immediately turned over by the owner to the trustees for the subcontractors, who in turn deposited with, or gave it to, the defendant to hold in accordance with a written agreement thereupon executed. This is the agreement:

" This is to acknowledge the receipt from Arthur L. Peirson, Charles I. Frank and Jack Silvestri, Trustees, under an agreement dated the......day of December, 1928, made between Hurtjam Realty Company and said Trustees above named and Perri Contracting Company for the benefit of contractors on. the Shubert Theatre job on the Easterly side of 165th Street, south of Jamaica Avenue, Jamaica, Queens County, in the City and State

of New York, the sum of Twenty-three Thousand Seven Hundred Thirty-three Dollars and Thirty-six Cents ($23,733.36) deposited by such three Trustees to secure the following:

"*First.* The completion of the building now being erected on said described premises in accordance with plans and specifications submitted to and approved by the undersigned and to the satisfaction of the engineers of the Lloyds First Mortgage Company and the installation of all equipment and chattels to be installed necessary for the conducting and maintaining of said premises as a theatre.

"*Second.* To secure the payment of any taxes, water rates and/or assessments that may be levied against the said premises up to the time when the said Trustees shall become entitled to the said moneys under this escrow agreement.

"*Third.* To secure the discharge from record of any Conditional Bills of Sale or Mechanic's Liens that may be filed against the said described premises or any other encumbrances which shall fail to give the Lloyds First Mortgage Company a good and valid first mortgage in the sum of Five Hundred Thousand ($500,000) Dollars and interest against the said premises against which the said Lloyds First Mortgage Company now holds a first mortgage in the sum of Five Hundred Thousand ($500,000) Dollars, that may be filed up to the date when the said Trustees shall be entitled to receive such moneys hereunder left in escrow to secure the payment of principal and interest that may accrue on said mortgage held by Lloyds First Mortgage Company up to the time when the said Trustees shall be entitled to receive the same as aforedescribed.

"*Fourth.* That when the Trustees aforedescribed shall be entitled to receive such moneys so deposited or the balance thereof the Lloyds First Mortgage Company, the depository of this fund, may pay the same unto the

said Trustees without regard to the conditions of the trust or the agreement under which they operate as such Trustees.

"Dated, December 27th, 1928.

"LLOYDS FIRST MORTGAGE COMPANY,
"By M. N. Koven,
"V.P.

"Approved by:
"Arthur L. Peirson.
"Charles I. Frank.
"Jack Silvestri."

That this sum of $23,733.36 was the final advance on the mortgage loan is conclusively evidenced by the foreclosure action subsequently brought by the defendant, to which the plaintiffs were made parties and wherein the defendant, then plaintiff, alleged the full advance of $500,000 to the owner and foreclosed by judgment of sale its lien for this amount. The last payment to the owner was turned over by check to these plaintiffs, or, what amounts to the same thing, the defendant's check was made payable to the plaintiffs with the written approval of the owner. The money belonged to these plaintiffs, as trustees, for the benefit of the subcontractors, and when paid over to the defendant to hold, pursuant to the agreement above recited, the money remained the plaintiffs' property in the hands of the defendant. The transaction was more than a mere empty gesture and we must take it at its face value and according to the representations of all the parties. When the defendant took back the check the money did not revert to its former ownership and become again the defendant's money to be advanced under the terms and conditions of the building loan agreement and mortgage. It had already been advanced and paid to the plaintiffs, and when it came back to the defendant, it was the plaintiffs' money held under the stipulations of the new agreement heretofore quoted in full.

Immediately upon the consummation of this new arrangement, the subcontractors proceeded to complete the building, putting on night and day shifts of one hundred men so that the theatre opened for its first performance on the evening of December 31, 1928, and has been open for regular business ever since. On December 26, 1928, the Building Department issued its certificate of occupancy to the owner and the theatre was opened with the full permission of the Fire Department. The plaintiffs had men at work finishing up, as late as January 14, 1929, but as the defendant refused to pay to the workmen the money in its hands for the work done, this action has been brought to recover it or such part thereof as is due, according to the agreement mentioned.

The money in the defendant's possession belongs to the plaintiffs to be paid upon certain conditions being performed. The plaintiffs claim that those conditions have been substantially complied with, considering the nature of the work and the occupancy and acceptance of the building, but under any conditions the defendant cannot profit by the default of the plaintiffs and keep their money over and above that which is necessary to make good any omissions. The law, say the plaintiffs, will make these adjustments and not allow a forfeiture of money to the enrichment of the holder. Accordingly the learned trial justice after taking all the evidence upon these disputed points made his decision wherein he found as facts that on December 27, 1928, the defendant received from the plaintiffs $23,733.36 for the use and benefit of the plaintiffs, subject to the conditions specified in the first and second paragraphs of the receipt given (the exhibit above given in full); that up to the time that the plaintiffs were entitled to the moneys all taxes, water rates and assessments were paid and that the defendant is entitled to an allowance of $12,250 for uncompleted items provided for in subdivisions first and fourth, and

a further sum of $1,500 paid to plaintiffs on January 4, 1929. Further, the judge found as a fact that the balance of $9,983.36 was the plaintiffs' money which should be returned to them. He gave judgment for this amount. The Appellate Division affirmed these facts but reversed on the law.

Under well-settled principles the facts as found will not justify the defendant in keeping the plaintiffs' money. As a sufficient amount will make the defendant or the owner whole; that is, will fully pay for the complete performance of all the conditions named in the receipt or agreement, equity will give the clear balance to the plaintiffs, for it is their money and will thus prevent a forfeiture or an unjust enrichment. This deposit with the defendant was not by way of a transfer of title; it was solely by way of security. Non-performance by the depositor, in the case of a security deposit, does not vest title in the secured party. It merely gives the secured party the right to resort to the security, but only to the extent of actual indemnification for his loss or damage. (*City of New York* v. *Brooklyn & Manhattan Ferry Co.*, 238 N. Y. 52; *Scott* v. *Montells*, 109 N. Y. 1; *Chaude* v. *Shepard*, 122 N. Y. 397; *Seidlitz* v. *Auerbach*, 230 N. Y. 167; *Schwartz & Co.* v. *Aimwell Co.*, 227 N. Y. 184.)

The defendant's counsel, recognizing the justice of this rule, has attempted, in his very thorough brief and complete review of the evidence, to show that the money was not paid to the plaintiffs, that the arrangement of passing checks was a mere blind, that the last payment on the mortgage was never made and that the $23,733.36 was always the defendant's money. This might be very persuasive if the findings of the trial judge, approved on appeal, were not to the contrary.

On the facts determined by the trial justice, the conclusion legally followed that the plaintiffs were entitled to judgment in the clear balance over and above the sum necessary to finish their work, and for this reason

the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.