OPINION OF THE COURT
Beatrice S. Burstein, J.
In this legal malpractice action plaintiffs, represented by the firm of Meiselman, Boland, Reilly & Pittoni (the Meiselman firm), are seeking to recover damages, inter alia, from *289 defendant Freund, their former counsel. Defendant Freund impleaded the Meiselman firm as a third-party defendant. One of the critical issues to be determined in this action is which of plaintiffs’ attorneys, defendant Freund or the Meiselman firm, had the obligation of perfecting an appeal in the underlying personal injury action. It has already been determined by prior order of this court (Wager, J.) (dated Feb. 22, 1985) that there are factual issues in that regard, and summary judgment in favor of the Meiselman firm will not lie.
By memorandum decision this court determined that the Meiselman firm should be disqualified as plaintiffs’ counsel because it has a conflict between its own interest and that of plaintiffs’ which arises out of the subject matter of this lawsuit. In affirming that determination (Schenck v Hill, Lent & Troescher, 130 AD2d 734) the Appellate Division stated that a clear conflict of interest was established because the Meiselman firm, as a third-party defendant, was in the position of deciding whether plaintiffs, its clients, should amend their complaint so as to sue it.
After oral argument that court received an affidavit of plaintiffs declaring " 'we voluntarily and willingly hereby waive any rights we may have as against’ ” the Meiselman firm. Because that affidavit was dehors the record the Appellate Division stated that it would not consider it, but "plaintiffs’ remedy, if they be so advised, is to make an appropriate motion before Special Term.” (Supra, at 735.) Plaintiffs apparently were "so advised” becausé their motion requesting that this court reconsider its earlier determination is now before this court.
For the reasons set forth below, this court finds that this type of conflict is so fraught with problems that even consent is not sufficient to permit continued representation, and, in any event, the consent obtained in this case does not reflect a full understanding of the legal rights being waived.
In disqualifying counsel who had an interest at odds with that of counsel’s clients, the Court of Appeals stated: "Viewed from the standpoint of a client, as well as that of society, it would be egregious to permit an attorney to act on behalf of the client in an action where the attorney has a direct interest in the subject matter of the suit. As in the dual representation situation, the conflict is too substantial, and the possibility of adverse impact upon the client and the adversary system too great, to allow the representation. In *290 short, a lawyer who possesses a financial interest in a lawsuit akin to that of a defendant may not, as a general rule, represent the plaintiff in the same action.” (Greene v Greene, 47 NY2d 447, 452 [1979].) Thus, despite the right of a party to select an attorney, an attorney "may not allow his own interests to conflict with those of his client. To hold otherwise would be to ignore the overriding public interest in the integrity of our adversary system.” (Greene v Greene, 47 NY2d 447, 453, supra.) In Greene, disqualification was found on another ground and so the Court of Appeals specifically left undecided the question of whether a conflict between counsel and counsel’s client ever can be waived effectively by a client.
Matter of Kelly (23 NY2d 368 [1968]) involved a disciplinary proceeding in which two attorneys had been suspended for professional misconduct, based, inter alia, on their representation of conflicting interests. There the conflict arose because one partner in a law firm also was employed by an insurance carrier. Nevertheless, the law firm was representing clients with cases against the carrier’s insureds, and was involved in settling those cases with the carrier.
The Court of Appeals remanded the proceeding for the taking of further proof on whether the attorneys had made full disclosure of the conflict to their clients and whether they had obtained the clients’ consent. More importantly for this case, the court stated that even full disclosure and consent would not necessarily resolve the issue.
"Even if there were disclosure to and consent by the clients * * * the circumstances, when fully developed, may indicate an impermissible actual conflict * * * [I]n some instances, because the relationships or interests create a substantial likelihood of profound conflict, or for other policy reasons, representation is not permitted under any circumstances.
"Thus, where a lawyer represents parties whose interests conflict as to the particular subject matter, the likelihood of prejudice to one party may be so great that misconduct will be found despite disclosure and consent * * *
"Similarly, there are other particular situations where the circumstances establish such delicate conflicting relationships and inescapable divided loyalties that the likelihood alone of improper conduct or motivation, without any showing of harm and regardless of disclosure and consent, may give rise to professional misconduct. Where divided loyalties exist, a lawyer may inadvertently, and despite the best of motives, be *291 influenced and act detrimentally to the client, or the appearance of misconduct will be unavoidable * * * Moreover, the unsophisticated client, relying upon the confidential relationship with his lawyer, may not be regarded as able to understand the ramifications of the conflict, however much explained to him”. (Matter of Kelly, 23 NY2d 368, 378, supra.)
Several affidavits by plaintiffs are relevant here. The first of these was submitted by the Meiselman firm when it moved to dismiss the third-party action against it. In that affidavit plaintiff Richard Kimball Schenck avers that the Meiselman firm has no liability to him for any malpractice. Yet Justice Wager found there was a question of fact in that regard. What role that affidavit, drafted by the Meiselman firm to protect its own interests, will play at trial remains to be seen. However, it is clear plaintiffs, in their own interests, never should have been asked to sign such a statement. It illustrates the problems created by this conflict, demonstrating that there are legal and/or factual issues called to the attention of Justice Wager which were not appropriately evaluated by plaintiffs, as laypersons.
In fact, plaintiff Richard Kimball Schenck attests to his lack of sophistication in that very affidavit, stating "The Court must know that as a layman your affiant has never been involved in a negligence suit or dealt with attorneys in which I was required to place faith and reliance.” Speaking of defendant he also avers that "By my then attorneys’ use of pressure upon my wife and myself * * * your affiant was forced into seeing that the proceeds of the settlement [in the prior action] were cashed through a procedure which I was opposed to but as a layman did not know how to resist.” These statements demonstrate just how vulnerable plaintiffs are.
After this court had disqualified plaintiffs’ counsel, Mr. Schenck executed another affidavit, on October 22, 1985, in support of his counsel’s motion to modify Justice Wager’s determination. In it Mr. Schenck states: "I am aware of what appears to be a conflict of interest. If the contention of Mr. Freund [defendant in this action] were upheld; to wit, that Mr. Boland were [sic] to take the appeal and that no appeal was taken, I have a cause of action against Mr. Boland and the firm of Meiselman, Boland, Reilly & Pittoni, which I could assert in this case. I am convinced that Mr. Freund’s contention is groundless and is being used as strategic ploy by Mr. Freund to deprive me of counsel of my choosing, to wit, Mr. Boland of Meiselman, Boland, Reilly & Pittoni.” This too *292 reveals Mr. Schenck’s lack of sophistication and counsel’s failure to fully advise plaintiffs of this court’s conclusion. Mr. Schenck says he is "aware of what appears to be a conflict of interest.” (Emphasis supplied.) In fact, when this affidavit was signed this court had already held that there was a conflict of interest.
Secondly, Mr. Schenck seems to be saying his claim could not be asserted without a finding in favor of defendant’s claim against the Meiselman firm. In fact, plaintiffs could have asserted their claim against the Meiselman firm as of right, without defendant’s contention being decided first. As a tactical matter, if they had done so, then to prove negligence they only would be required to prove that one of the parties had an obligation to perfect the appeal, thereby leaving defendant and the Meiselman firm to battle out which of them bore that responsibility. That burden is quite different from what Mr. Schenck views the situation to be.
Furthermore, if defendant Freund’s claim was just a "ploy”, without any factual basis, the third-party action would have been dismissed by Justice Wager, or the Meiselman firm would have appealed Justice Wager’s order.
Lastly, there is the affidavit referred to by the Appellate Division in which plaintiffs state, in relevant part:
"[W]e waive and surrender any rights that we may have against the Meiselman firm knowing full well the arguments made by the third-party plaintiff, knowing full well the Appellate Division decision, having been present during the debate between our counsel Donald J. Boland, Esq., and the Bench, and recognizing that some technical right may exist for us to make a claim against the Meiselman firm which we have and do waive.
"We are satisfied totally that the tactic of the third-party plaintiff Harold Freund is merely to divide us from our chosen counsel with a technical argument which cannot stand up in the light of the facts once they are heard by a court of law.”
In fact, plaintiffs have much more than "some technical right”, and defendant/third-party plaintiff has raised more than a "technical argument”. Plaintiffs have a significant substantive right to assert a claim of malpractice against their present counsel. This raises a question as to whether this "waiver” was made with full knowledge and understanding.
In Matter of Kelly (23 NY2d 368, 369, supra), the court stated that there would be no effective consent by a client to *293 continuing representation by an attorney with a conflict of interest if it should appear that the conflict would necessarily affect the attorney’s vigor in pursuing claims its clients had against the entity with whom there was a conflict. That is the case here. In all likelihood any other firm in the position of the Meiselman firm would never have had plaintiffs execute an affidavit stating that the Meiselman firm has no liability to plaintiffs. Rather, other counsel long ago would have asserted a claim against the Meiselman firm. Thus, this right of plaintiffs is not being advocated zealously by their present counsel, presumably on the basis of counsel’s opinion that it has no merit. That opinion may well be a product of counsel’s own involvement in the action. As noted, Justice Wager, in refusing to dismiss the third-party claim, concluded that there was at least a factual basis for such a claim. Accordingly, based upon all of the aforesaid, the prior determination of this court is adhered to in its entirety.
In reaching this conclusion the court is aware that generally a client "who is made fully cognizant of potential (or, occasionally, actual) conflicts [between clients] is entitled to take his chances.” (Matter of Kelly, 23 NY2d 368, 378, supra.) However, here the conflict is between counsel and its client, and it is affecting the manner in which the action is being litigated, to plaintiffs’ detriment.
Amplifying on a client’s right to counsel of its own choosing in S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp. (69 NY2d 437 [1987]), the Court of Appeals reversed an order disqualifying counsel. However, the circumstances in S & S were vastly different than those before this court. That case involved trial tactics, deciding whether or not plaintiff should call counsel as a witness. This case involves the forfeiture of a cause of action. S & S involved a "sophisticated business plaintiff”, the court holding that "an informed commercial plaintiff’s choice” should not be ignored. (Supra, at 445.) By their own admission plaintiffs in this case are unsophisticated laypersons. They are being advised by their own counsel that they should not sue their counsel for malpractice, when a prior court has determined that there are issues of fact as to whether their counsel committed malpractice. Finally, unlike the plaintiff in S & S, plaintiffs’ affidavits in this case, particularly the one reciting that plaintiffs are waiving a "technical” right, raise questions as to whether plaintiffs are fully cognizant of the actual conflict, of the nature of their substantive rights against their own counsel, and of the tactical positions *294 which could be employed to their benefit in their present action. "Although it is usually recognized that a party to litigation may select an attorney of his or her choosing, this general right is not limitless.” (Greene v Greene, 47 NY2d 447, 453, supra.) It cannot be invoked in this case.
One authority reviewing the Appellate Division determination in this case questioned whether that determination would provide every lawyer/defendant in a legal malpractice case a way of effectively divesting the plaintiff of representation, by impleading plaintiff’s present firm. (Siegel, 331 NY St L Dig, at 2 [July 1987].) That simply is not so. In this case the Meiselman firm was engaged by plaintiffs to perform substantive work related to the underlying action some time before plaintiffs sought to institute the malpractice action. In most malpractice cases plaintiffs’ attorneys have had no involvement with the prior underlying action. Therefore, there would be no basis at all for third-party actions against them, and, consequently, no basis for disqualification.
Submit order on notice, including a 60-day stay of all proceedings, so as to afford plaintiffs an opportunity to obtain new counsel.