OPINION OF THE COURT
M. Hallsted Christ, J.
The central issue herein is whether a nonrefundable matri *672 monial agreement entered into between defendant client and Joel R Brandes on behalf of plaintiff Joel R Brandes, P. C. is valid and enforceable.
The agreement, in pertinent part, provides:
"1. The client agrees to pay to the attorneys a minimum fee of $15,000.00 which is paid to assure the availability of the 'attorneys’ and which is not to be returned to the client, in whole or in part, under any circumstances.
"3. The fee of the attorneys shall be the minimum fee, or $275.00 per hour for Joel R. Brandes’ time, $175.00 per hour for associates’ time, and $65.00 per hour for paralegal time,
WHICHEVER IS GREATER.
"13. This agreement is governed by the Laws of New York. If any portion of it is declared to be unenforceable or invalid, all other parts still remain in effect.
"the client acknowledges the receipt of a copy of this AGREEMENT AT THE TIME OF SIGNING IT. THE CLIENT STATES THAT THIS AGREEMENT HAS BEEN READ AND UNDERSTOOD BEFORE being signed.” (Emphasis in original.)
Mr. Brandes concedes that the defendant reconciled with her husband, declined to prosecute the action to dissolve her marriage and discharged counsel within a relatively short period of time subsequent to the execution of the subject agreement.
As evidenced by plaintiff’s billing records, a total of five hours of counsel’s time was expended on behalf of the defendant herein with the aggregate sum of $1,305 deducted from the $15,000 deposited on the execution of the agreement.
Viewed from several separate perspectives, the subject retainer agreement in unenforceable.
Contrary to the conclusion drawn by the movant, the ruling in Jacobson v Sassower (66 NY2d 991) did not turn on the general efficacy of nonrefundable retainer agreements.
The plaintiff, in his column Law and The Family, appearing in the New York Law Journal, July 31, 1990, made reference to the determination of the New York State Bar Association Ethics Committee relating to nonrefundable retainer agreements.
He noted therein that the Ethics Committee did not find such agreements presumptively violative of the Code of Professional Responsibility. However, the following three caveats were expressed in mandatory terms:
*673 "The specified minimum must not be excessive or unconscionable under the circumstances of the particular matter; nonrefundability must be expressly conditioned on the absence of lawyer default; and the agreement must clearly and unambiguously explain in language that is 'fully known and understood by the client’ the grounds that would entitle the client to a refund of the otherwise non-refundable fee.” (NY St Bar Assn Opn No. 599.)
This court opines that the subject agreement fails to pass muster with respect to each of the above-noted caveats.
Not only does the subject agreement fail to provide expressly or otherwise that nonrefundability is conditioned upon the absence of attorney default, but also fails to recite any ground upon which the client would be entitled to a refund.
On the contrary, it is beyond cavil that the plaintiff, in drafting the subject agreement, sought to eliminate any possibility of a refund, so as to insure the payment of his fee, and initiated the underlying declaratory judgment action as a preemptive strike to forestall the filing of a complaint or grievance against counsel.
Not only does the subject agreement fail to provide any basis on which the fee tendered could be refunded thereby contravening the latter two caveats expressed above, but it also runs afoul of the initial proscription in that the "minimum fee” of $15,000 is both grossly excessive and shocking to the court’s conscience.
As Justice Fredman noted in a different but related context, abuses of the nature and kind herein noted, if endemic to the matrimonial Bar, may occasion "the control that will be placed on them, in the same fashion that so long ago the Appellate Divisions took over the setting of the fee entitlements of the negligence bar”. (Akerson v Akerson, NYLJ, May 8, 1991, at 28, cols 3, 4.)
As noted in the preamble to the American Bar Association Model Rules of Professional Conduct, "The legal profession is largely self-governing * * * The legal profession’s relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived [and perceived] in the public interest and not in furtherance of parochial or self-interested concerns of the bar.”
"In assessing legal fees there are certain factors to be considered such as the time and labor required, the difficulty *674 of the questions presented, the skill required to perform the services including the lawyer’s experience, ability and reputation, the amount involved and benefit resulting to the client from the services (Matter of Freeman, supra).” (Cass & Sons v Stag's Fuel Oil Co., 148 Misc 2d 640, 642.)
A review of the time sheets submitted by the plaintiff reveals the expenditure of five hours of time with respect to the defendant’s matter, prior to counsel’s discharge.
Of the time claimed, 8/10 of one hour was expended prior to the execution of the retainer agreement by the defendant!
Of the remaining 4.2 hours, 1.8 hours was expressly expended in conversations, of which .4 hours was expended in telephonic communication with an attorney (presumably counsel for the defendant’s husband).
The bulk of the remaining time claimed is divided between telephone conversations with the defendant, a conference, a discussion and a review of information provided by or on behalf of the defendant.
It merits mention that not one document was generated during the tenure of the agreement. Not one pleading or letter was prepared by counsel. No appearance in court was made. No conference among counsel was scheduled, nor does it appear from the time sheets submitted that the plaintiff was involved in negotiating a settlement with adverse counsel during the pendency of the attorney-client relationship.
Thus, to permit counsel to retain what he characterizes as the minimum fee would be to lend judicial approval to an hourly rate of $3,571.43 ($15,000 4- 4.2 hours) and sanction the violation of DR 2-106, the Disciplinary Rule that prohibits a lawyer from charging or collecting a clearly excessive fee.
"As an attorney he [has] to demonstrate that such fee was fair and reasonable * * * Inasmuch as attorneys are held to the highest standards when dealing with clients over fee matters” (Matter of Jackson, 120 AD2d 309, 316 [3d Dept], lv denied 69 NY2d 608); inasmuch as the benefit or value received by the client is "so completely out of proportion to the value of the attorney’s services * * * it would be unconscionable as matter of law to permit him to enforce his contract.” (Ward v Orsini, 243 NY 123, 128.)
As noted in American Bar Association Formal Opinion No. 250, "[0]urs is a learned profession, not a mere money-getting trade”.
Therefore, whether viewed from the perspective related to *675 the criteria associated with nonrefundable fee agreements, as espoused by the New York State Bar Association Ethics Committee, and referred to by the plaintiff in his column, Law and The Family: The Ethics of Getting Paid (NYLJ, July 31, 1990, at 3) or from the perspective of DR 2-106, the subject retainer agreement is unenforceable.
Moreover, the agreement as written is fatally flawed from alternate perspectives.
As written, paragraphs 1 and 3 of the subject agreement most closely resemble liquidated damage provisions.
In commercial settings, liquidated damage clauses will not be enforced unless the amount set bears a reasonable proportion to the probable loss, and actual losses would be difficult to calculate or defy precise estimation. (See, City of Rye v Public Serv. Mut. Ins. Co., 34 NY2d 470.)
"A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion. A promisor would be compelled, out of fear of economic devastation, to continue performance and his promisee, in the event of default, would reap a windfall well above actual harm sustained. (Ward v Hudson Riv. Bldg. Co., 125 NY 230, 234-235; 5 Williston, Contracts [3d ed], § 776, p 668.)” (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 424.)
"If the sum agreed upon * * * is so large as to be out of all proportion to the probable or presumptive loss, and is therefore not a fair measure of the damage actually sustained, it will generally be regarded as a penalty * * * and the recovery will be limited to the actual damages sustained.” (36 NY Jur 2d, Damages, § 161.)
Factors to be considered in determining whether one contracting party extracted an unconscionable penalty from the other include the level of sophistication of the parties, and whether one or both parties were either members of the Bar or represented by able counsel during negotiation and execution of the parties’ agreement. (See, Boyle v Petrie Stores Corp., 136 Misc 2d 380.)
There is nothing in the record that would lead this court to conclude that the defendant was possessed of any certain level of sophistication or well versed in the realm in which she found herself during a period of elevated emotions that is inherent to matrimonial strife at the time she presented *676 herself to the plaintiff, a highly sophisticated and well-known matrimonial attorney.
If courts cautiously scrutinize such provisions where inserted into commercial contracts negotiated at arm’s length by sophisticated businessman for corporate entities (see, e.g., Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516) then a fortiori, the presence of a liquidated damage clause in a retainer agreement will meet with heightened caution, as the attorney-client relationship is "so personal and confidential” that it is subjugated to principles that "would not prevail in the case of ordinary contracts”. (Matter of Dunn, 205 NY 398, 402.)
"He [an attorney] is an officer of the court and is judged as such, and technical contracturai rights must yield to his duty as such officer.” (Matter of Friedman, 136 App Div 750, 752, affd 199 NY 537.)
"Contracts between attorney and client, as a matter of public policy, are of special interest and concern of the courts. They are not always enforceable in the same manner as ordinary commercial contracts.” (Cohen v Ryan, 34 AD2d 789, 790.)
That the court has traditionally supervised and regulated the charging of legal fees under its inherent and statutory powers is beyond peradventure (see, Theroux v Theroux, 145 AD2d 625; Schrauger v Schrauger, 146 AD2d 955 [3d Dept], appeal dismissed 74 NY2d 844).
Courts generally scrutinize fee arrangements between counsel and client with particular caution and impose the burden of demonstration on the attorney-draftsman to show, inter alla, that the retainer was fair and reasonable. (See, Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172.)
The court’s traditional authority to regulate fee agreements between attorneys and their clients is substantially broader in the matrimonial field (see, Winans v Winans, 124 NY 140; Theroux v Theroux, 145 AD2d 625, supra) due, in part, to the wider social implications involved, heightened public interest and the emotional turmoil of the parties.
Under New York law, a client has an unfettered right to discharge counsel at any time, with or without cause. (See, Matter of Montgomery, 272 NY 323; Reubenbaum v B. & H. Express, 6 AD2d 47 [1st Dept]; Petty v Field, 97 AD2d 538, appeal dismissed 61 NY2d 902.)
The insertion of a liquidated damage provision in a retainer *677 agreement is, in this court’s view, an anomaly for it acts as a deterrent to the exercise of a client’s right to discharge counsel.
Where, as here, the apparent cost to the breaching defendant would be substantially higher than the loss reasonably contemplated by the plaintiff, if any, the right to discharge counsel would be significantly and impermissibly chilled.
To uphold the efficacy of a matrimonial retainer containing a nonrefundable fee provision, would elevate and glorify strong economic compulsion and undermine societal underpinnings by fostering an atmosphere that is antithetical to reconciliation.
For as the plaintiff notes in the treatise he coauthored (1 Foster-Freed-Brandes, Law and The Family New York § 1:1 [2d ed]) "Marriage is more than a civil contract, more than a mere personal relationship, and more than a mere economic device to regulate the proprietary rights of the persons concerned. Marriage has been said to be the cornerstone of the family and therefore the foundation of organized society upon which society depends for its survival, and it is a status or institution to which the state [and by extension counsel, as officers of the court] is a third party.”
The attempt to justify the inclusion of the subject penalty provision is based on the premise that plaintiff’s agreement to represent the defendant herein precluded the application of his time and energy on behalf of other potential clients.
Though plaintiff’s position on point has surface appeal, it will not withstand scrutiny. Plaintiff’s posturing is best illustrated by the conspicuous absence of a numerical delineation of the other matters assertedly rejected during the very limited tenure of the subject attorney-client relationship, and the express contemplation (para 3 of applicable agreement) that unidentified and an unquantified number of associates and paralegals could be utilized to attend to the defendant’s matter.
At a minimum, counsel should have listed each contact with a potential client (without full identification so as to protect their right to privacy) that could not be serviced due specifically and exclusively to plaintiff’s involvement with the defendant’s matter and correspond such list to dates falling squarely within the period of retention.
It may be appropriate and ameliorative for professionals practicing in the form of a firm to adjust their priorities and *678 schedules and to delegate responsibilities to their associates during periods of high volume intake, or for a solo practitioner to reallocate resources, in manners deemed proper and salutary.
While the court makes this suggestion, the undersigned would not presume to instruct any member of the Bar as to the manner in which a client’s matter should be handled or the level in which an attorney’s office should be staffed.
Nonrefundable retainer agreements violate the universal contract principle which requires the nonbreaching party to mitigate its damages.
Moreover, "[a] necessary corollary of the rule that a client has an unfettered right to discharge his attorney at any time and for any reason is that the client, upon discharging his attorney, cannot be held liable for damages for breach of contract.” (Jacobson v Sassower, 122 Misc 2d 863, 864, affd 107 AD2d 603, affd 66 NY2d 991.)
Clearly, Mr. Brandes does not restrict his practice to a single client at any given time. His opportunity to mitigate damages, if any, sustained upon discharge is substantially increased for as counsel proudly declares he is "[a]n attorney with a respected (admirable) reputation in the matrimonial field * * * a prolific writer and author; write[s] a monthly column on matrimonial law in The New York Law Journal * * * co-authored Law and The Family, a (now) six volume treatise on matrimonial law * * * regularly lecture[s] before the New York State Bar Association * * * was Chairman of the Matrimonial Law Committee * * * and [is] held in high esteem in the field by colleagues and the public alike. ”
Just as counsel failed to delineate the number of potential clients turned away during the period of retention that were rejected due to his involvement with the defendant’s matters, exclusively, so too has counsel failed to indicate what steps at mitigation were taken subsequent to his discharge.
It cannot be reasonably advanced that the fee tendered herein represented a good-faith estimate of the damages contemplated in the event of discharge, but was rather designed to secure and insure the absolute payment of counsel’s predatory fee.
"Non-performance by the depositor, in the case of a security deposit, does not vest title in the secured party. It merely gives the secured party the right to resort to the security, but *679 only to the extent of actual indemnification for his loss or damage” (Peirson v Lloyds First Mtge. Co., 260 NY 214, 222).
Plaintiff argues that the defendant clearly understood the nonrefundable nature of the agreement contending that the defendant "eagerly sought the services of my firm, accepting, without hesitation, the terms of my employment.”
Standing alone, a client’s consent is inadequate to demonstrate an awareness and complete understanding of one’s legal rights and obligations. (See, Schenck v Hill, Lent & Troescher, 140 Misc 2d 288 [Sup Ct, Nassau County, Burstein, J.].)
An individual consulting an attorney with respect to matrimonial matters is often distraught. Such individual is likely to be concerned with personal matters such as maintenance and support, and be distracted by the acknowledged failed relationship. These factors clearly imperil any meaningful understanding of not only the terms of a retainer agreement, but also negatively impact upon the opportunity to comprehend an explanation of such individual’s legal rights, engendering frequent repetitions thereof.
"When a client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement” (Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 457-458 [emphasis supplied]).
"The relevant factors in the determination of the value of legal services are the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, and the results achieved” (Jordan v Freeman, 40 AD2d 656 [1st Dept]; accord, Sand v Lammers, 150 AD2d 355).
"If the discharge is without cause before the completion of services, then the amount of the attorney’s compensation must be determined on a quantum meruit basis (see, Teichner v W & J Holsteins, 64 NY2d 977, 979; Ventola v Ventola, 112 AD2d 291, 292; Shelbourne Garage v Licht, 34 AD2d 563).” (Theroux v Theroux, 145 AD2d 625, 626, supra.)
That the plaintiff herein was discharged before initiating litigation aimed at the dissolution of the marital union is not in dispute.
It appears that the discharge was without legal cause, *680 notwithstanding unsupported verbiage to the contrary contained within defendant’s pleading.
Clearly, the timing of the defendant’s reconciliation with her husband, the absence of any proof of dissatisfaction with plaintiff’s representation prior thereto, and the failure to delineate the basis for the claim of dissatisfaction, are factors which lead this court to conclude that the discharge was without cause.
Moreover, the prayer contained in the defendant’s counterclaim for the return of merely those portions of the sums deposited on execution of the retainer agreement that were not earned is inconsistent with a discharge for cause, as an attorney discharged for cause or misconduct forfeits the right to his fee. (See, Teichner v W & J Holsteins, 64 NY2d 977, supra.)
It is encumbent upon an attorney discharged by his client to accede to the wishes of his client, and to promptly refund any part of a fee paid in advance that has not been earned. (See, DR 2-110 [A], [B].)
A strong argument can be made that Mr. Brandes, in failing to promptly issue the appropriate refund has not only violated DR 2-106, but also DR 2-110.
Inasmuch as the underlying agreement violates the prohibition expressed within DR 2-106 against clearly excessive fee arrangements; inasmuch as it contravenes the caveats expressed in Opinion No. 599 of the New York State Bar Ethics Committee; inasmuch as the plaintiff failed to satisfy his burden and establish that the fee agreement was fair and reasonable; inasmuch as the "minimum fee” clause constitutes a penalty provision designed to secure and absolutely insure the payment of counsel’s fee and does not represent an effort to calculate anticipated losses; inasmuch as there is no indication that any losses contemplated by counsel defied calculation or would have been difficult to quantify; inasmuch as counsel failed to delineate the number of clients turned away due solely to his involvement in the defendant’s matters; inasmuch as the agreement impermissibly chills a client’s absolute right to discharge counsel; inasmuch as the agreement as drafted appears to have been designed to circumvent the client’s insulation from liability to her discharged attorney for breach of the retainer agreement, this court declares as follows:
(1) The subject agreement is not legally viable and cannot be enforced in accordance with its terms;
*681 (2) Plaintiff is merely entitled to retain on a quantum meruit basis the sum of $1,305;
(3) The defendant may enter judgment against the plaintiff for the balance of the sums deposited on execution of the retainer agreement ($13,695) together with interest from the date of discharge and costs to be taxed by the County Clerk.