LOGUE, J.
Jose I. Sanchez, the father, appeals the trial court’s denial of his petition for the return of his minor children to Brazil under the Hague Convention on the Civil Aspects of International Child Abduction.[1] While acknowledging that the mother, Ruth E. Suasti, unilaterally removed the children from Brazil, the trial court decided that the father lacked the necessary “rights of custody” under the Convention to be entitled to have the children returned. We disagree with the trial court. A Brazilian court has ruled that the father has the right to prohibit the mother from changing the children’s country of residence. Such a right rises to the level of “rights of custody” under the Hague Convention. Accordingly, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
The mother and father were married in Ecuador in 2001 and shortly afterward moved to Brazil. The father became a citizen of Brazil while the mother remained a citizen of Ecuador. The couple had two daughters, one who is currently eleven years old and one who is currently seven, both born in Brazil and citizens of Brazil.
The mother and father later divorced. As part of the separation, they entered into an agreement resolving issues of child custody, child support, and alimony; Under the separation agreement, which was approved by a Brazilian family court, the mother had custody of the children subject to a visitation schedule for the father. This visitation schedule permitted the father to pick up the children one day a week and return them the same day after ten hours of time together. It also mandated that holidays and school vacations would be shared proportionally. In addition, the parties agreed the children would be allowed to travel to Ecuador at least once a year to visit paternal and maternal grandparents. A few years later, the father sought and obtained a modification to the visitation schedule to permit him to pick up the children three days a week.
In 2011, the mother undertook to take the children to Ecuador. The father duly executed a “Standard Authorization Form for Minors or Adolescents Traveling Abroad.” The authorization provided that the mother could travel with the children during a period of time extending for one year, ending in December 2012. The authorization to travel contained the following restriction: “[TJhis document is not an authorization to establish permanent residence abroad.” In January 2012, the mother took the children to Ecuador to visit family members and returned to Brazil. In April 2012, she took the children to Miami, where they have remained ever since.
One month after the mother moved the children to Miami, the father filed a. petition in a Brazilian court for the return of *660 his children. The mother answered the petition. She contended a temporary removal of the children from Brazil was proper because she had sole custody of the children and the travel authorization form permitted her to travel with the children until December 2012. The Brazilian court agreed with the mother and denied the father’s petition. After the travel authorization expired, the father renewed his petition and the court agreed with the father. The Brazilian court then ordered the return of the children. In doing so, the court determined, under Brazilian law, the mother could not change the children’s country of residence without the father’s consent or a court order.
While the Brazilian proceedings were still ongoing, the father filed a petition for the return of his minor children in the trial court below. After considering the pleadings and documentation submitted by the parties, the trial court denied the father’s petition on the basis that the father had no “rights of custody” under the Hague Convention. This appeal followed.
ANALYSIS
“The [Hague] Convention’s central operating feature is the return remedy.” Abbott v. Abbott, 560 U.S. 1, 9, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010). If a child under the age of sixteen has been wrongfully removed or retained within the meaning of the Hague Convention, the child must be promptly returned to the child’s country of habitual residence, unless certain exceptions apply. Id.[2] No exceptions are asserted in this appeal. We therefore only address whether the children were wrongfully removed or retained within the meaning of the Convention.
To demonstrate a wrongful removal or retention of a child under the Hague Convention, a petitioner must establish three elements. Larbie v. Larbie, 690 F.3d 295, 307 (5th Cir.2012). First, the petitioner must show the child has been retained in a country outside the child’s country of habitual residence. Id. Second, the wrongful removal must be a violation of the petitioner’s “rights of custody,” which “include rights relating to the care of the person of the child and, in particular, the right to determine the child’s place of residence.” Abbott, 560 U.S. 1, 9, 130 S.Ct. 1983 (quoting Hague Convention, art. 5(a)) (emphasis added). These rights arise “by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.” Hague Convention, art. 3. Finally, the petitioner must demonstrate the rights of custody “were actually being exercised or would have been exercised but for the removal.” Wigley v. Hares, 82 *661 So.3d 932, 936 (Fla. 4th DCA 2011) (citing Hague Convention, art. 3).
The only disputed issue in this regard is whether the father had “rights of custody” under the Hague Convention. The trial court concluded the father merely had “rights of access.” The Hague Convention draws a distinction between a parent’s “rights of custody” and “rights of access.” A parent’s “right of access” is defined as “the right to take a child for a limited period of time to a place other than the child’s habitual residence.” Hague Convention, art. 5. The remedy for the violation of a parent’s right of access does not include the right to force the return of the child. Instead, a court may, for example, “force the custodial parent to pay the travel costs of visitation, or make other provisions for the noncustodial parent to visit his or her child.” Abbott, 560 U.S. at 13, 130 S.Ct. 1983 (internal citation omitted).
In this case, the trial court erred in its determination because it overlooked the Brazilian appellate court ruling that recognized the father’s right to prohibit the mother from changing the children’s country of residence without his consent. We consider that ruling to be dispositive of the issue of the father’s “rights of custody” in light of the holding in Abbott.
In Abbott, the United States Supreme Court held a non-custodial parent’s right to consent before the custodial parent could take the child to another country constituted “rights of custody” under the Hague Convention. Id. at 10, 130 S.Ct. 1983.[3] The couple in Abbott had separated and a Chilean court granted the custodial parent daily care and control of the couple’s minor son, while granting the noncustodial parent visitation rights. Id. at 6, 130 S.Ct. 1983. The non-custodial parent also had the authority to consent before the custodial parent could take the child to another country under Chilean law. In other words, the non-custodial parent had a joint right to determine the child’s country of residence. Id. Despite this right, the custodial parent left Chile and moved the child to the United States without the consent of the non-custodial parent. Id.
When the non-custodial parent petitioned for the return of the child to Chile, the custodial parent argued the non-custodial parent merely had “rights of access” to the child rather than “rights of custody” under the Hague Convention. Id. at 14, 130 S.Ct. 1983. The Supreme Court disagreed, abrogating Croll v. Croll, 229 F.3d 133 (2d Cir.2000), a case relied on by the trial court in this case. In doing so, the Court held a non-custodial parent’s joint right to determine a child’s country of residence constituted “rights of custody” under the Hague Convention. Id. at 10, 130 S.Ct. 1983.
Similarly, in the instant case, the father had a right of custody. This right was recognized by the Brazilian appellate court when it ordered the return of the children and ruled the mother could not change the children’s country of residence without the father’s consent. That order established the father’s “rights of custody” under the Hague Convention. See Hague Convention, art. 3 (stating rights of custody can arise by reason of a judicial decision); see also Cook v. Scott, No. 08-12520, 2008 WL 2947692 (E.D.Mich. July 31, 2008) (holding a father had a right of custody under the Hague Convention, where an English *662 court’s order prohibited the mother from removing the children from England and granted the father visitation rights on alternate Saturdays); David S. v. Zamira, 151 Misc.2d 680, 574 N.Y.S.2d 429, 432 (N.Y.Fam.Ct.1991) (holding a Canadian court’s order giving the non-custodial parent visitation rights and restricting the custodial parent from leaving the country constituted an order granting a right of custody to the non-custodial parent).
Nothing in this opinion should be construed as a comment on any underlying custody claims. Those matters are properly left for a Brazilian court’s determination. See Wigley, 82 So.3d at 936 (“A United States court deciding an abduction claim is empowered ‘to determine only rights under the Convention and not the merits of any underlying child custody claims.’ ” (quoting 42 U.S.C. § 11601(b)(4))). We only conclude the father had “rights of custody” sufficient to trigger a return order under the Hague Convention.
Reversed and remanded.

. The terms of the Convention are codified in 42 U.S.C. § 11601 et seq. Both the United States and Brazil are signatories.

. If the petitioner demonstrates a wrongful removal or retention of a child under the Hague Convention, the child must be returned to his or her country of habitual residence unless the respondent can establish one of the following affirmative defenses: (1) the proceeding for the return of the child was commenced more than one year after the removal of the child and the child has become well-settled in his or her new environment; (2) the petitioner consented to or subsequently acquiesced in the removal or retention; (3) there is a grave risk that the return of the child would expose him or her to physical or psychological harm; or (4) the return of the child would not be permitted under the fundamental principles of the requested country relating to the protection of human rights and fundamental freedoms. In re Ahumada Cabrera, 323 F.Supp.2d 1303, 1310 (S.D.Fla.2004). "The Convention also allows courts to decline to order removal if the child objects, if the child has reached a sufficient age and degree of maturity at which it is appropriate to take account of its views.” Abbott, 560 U.S. at 22, 130 S.Ct. 1983 (citation and internal quotation omitted).

. The non-custodial parent in Abbott had a ne exeat right. Black's Law Dictionary 1131 (9th ed. 2009) states that ne exeat is a Latin phrase meaning “that he not depart” and defines it in family law as “an equitable writ restraining a person from leaving, or removing a child ... from, the jurisdiction.”