15-3500-cv (L)
Tobin v. Gluck

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of March, two thousand seventeen.

PRESENT: REENA RAGGI,
　　　　　　 DENNY CHIN,
　　　　　　 SUSAN L. CARNEY,
　　　　　　　　　 *Circuit Judges*.

-----------------------------------------------------------------------------

HELENE K. TOBIN,
　　*Plaintiff-Counter-Defendant-Appellee-Cross-Appellant*,

　　　　　　　　　　　　　　　　　　　　　　　　 Nos. 15-3500-cv

　　　　　　 v.　　　　　　　　　　　　　　　　　　 15-3685-cv

IVAN GLUCK, PHYLLIS GLUCK,
　　*Defendants-Counter-Claimants-Appellants-Cross-Appellees*.

-----------------------------------------------------------------------------

APPEARING FOR PLAINTIFF:　　 ROBERT D. GOLDSTEIN, Epstein Becker & Green, P.C., New York, New York.

APPEARING FOR DEFENDANTS:　 DAVID SALHANICK (David Segal, *on the brief*), Sukenik, Segal & Graff, P.C., New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the December 8, 2015 judgment of the district court is AFFIRMED.

Defendants-counter-claimants Ivan and Phyllis Gluck appeal from a $587,078 judgment entered after a bench trial in favor of plaintiff Helene Tobin on her New York State breach-of-contract claim, with respect to a 2007 settlement agreement (the "Stipulation") pertaining to leased property. *See Tobin v. Gluck*, 137 F. Supp. 3d 278, 294–98, 300–01 (E.D.N.Y. 2015). Tobin cross-appeals the district court's offset of the final judgment by the amount of a security deposit in her possession. *See id.* at 311–13. On appeal of a judgment following a bench trial, we review a district court's conclusions of law *de novo* and its findings of fact for clear error. *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012). In applying these principles, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Stipulation Interpretation

The district court found defendants to have breached the Stipulation requirement to return the "captioned premises" in good order because the land and water were contaminated by hazardous chemicals. *See Tobin v. Gluck*, 137 F. Supp. 3d at 294–98, 300–01. Defendants challenge the district court's construction of the term "captioned premises" to encompass the underlying land and groundwater as well as the building erected thereon.

2

Under New York law, which controls here, settlement agreements must be enforced according to the plain meaning of their language. *See Brad H. v. City of New York*, 17 N.Y.3d 180, 185, 928 N.Y.S.2d 221, 224 (2011); *Town of Warwick v. Black Bear Campgrounds*, 95 A.D.3d 1002, 1003, 943 N.Y.S.2d 608, 610 (2d Dep't 2012). The Stipulation at issue does not specifically define the term "premises," but the case caption states, *inter alia*, "Premises Address: 3480 Nostrand Avenue, Brooklyn, New York." J.A. 500. The word is commonly understood to mean a "house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses." Premises, *Black's Law Dictionary* (10th ed. 2014). New York precedent is not to the contrary. It has long presumed that a lease conveying an entire building encompasses the land on which the building stands unless the lease expressly states otherwise. *See, e.g.*, *Doyle v. Lord*, 64 N.Y. 432, 436 (1876); *accord Second on Second Café, Inc. v. Hing Sing Trading, Inc.*, 66 A.D.3d 255, 267–68, 884 N.Y.S.2d 353, 362 (1st Dep't 2009) (collecting cases); *cf. Moy v. Young T. Lee & Son Realty Corp.*, 187 A.D.2d 287, 289, 589 N.Y.S.2d 457, 458 (1st Dep't 1992) (not applying presumption where lease explicitly defined "demised premises" as those areas within building indicated on floor plan). Defendants point to no authority suggesting that the general interpretive principles applicable to leases should not apply to settlement agreements pertaining to leases, and we see no logical reason to depart from those principles here. Their urged distinction between "premises" and "premises address" is unpersuasive because the word "address" only adds precision in identifying the premises leased. It

3

does not signal a departure from the presumption that those premises include the land as well as the building at the specified address.

In the alternative, defendants argue that circumstances surrounding the Stipulation's execution—specifically, resolution of a lease dispute—make the term "premises" sufficiently ambiguous to require extrinsic evidence. Even assuming Stipulation ambiguity, the lease does not support defendants' narrow construction. While Section 1.1 of the lease—the introductory summary relied upon by defendants—refers to the "demised premises" as the "*[e]ntire building* known as 3480 Nostrand Avenue," J.A. 434 (emphasis added), the Stipulation's formal definition of "demised premises" is "the *entire property described as the entire building* known as 3480 Nostrand Avenue," *id.* at 436 (emphasis added). The definition adds, "the Demised Premises presently has the street address of 3480 Nostrand Avenue . . . *together with the building* and any improvements thereon." *Id.* (emphasis added). By thus referring to "the entire property" and then saying that the premises is the street address "together with the building," *id.*, the lease only reinforces the general understanding that it conveys the building *and* the land on which it stands, which together are identified by the street address for the whole. Lease references to the "interior" and "exterior" or the "outside wall" of the "Demised Premises," *id.* at 441–42, 453, warrant no different conclusion. While they specifically apply to the building included in the Demised Premises, they cannot reasonably be read to signal an intent to exclude from the lease the land occupied by the building.

Accordingly, defendants' challenge to the district court's interpretation of the Stipulation term "captioned premises" fails on the merits.

2.    Damages Award

Defendants challenge the sufficiency of the evidence supporting the damages award.[1]  Under New York law, the party "complaining of injury has the burden of proving the extent of the harm suffered," *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40 (2d Cir. 2009) (internal quotation marks omitted), and the measure of damages where a party breaches an agreement to surrender a leased property in a certain condition is the cost of restoring the premises to the condition in which it should have been surrendered, *see City of New York v. Penn. R.R. Co.*, 37 N.Y.2d 298, 301, 372 N.Y.S.2d 56, 58 (1975).

Defendants contend that the record fails to show that vapor extraction, Tobin's proposed means of remediation, was "reasonable" because her expert did not conduct tests on and price the alternative method of chemical injection, thus depriving the district court of the opportunity for a proper cost-benefit evaluation.  We disagree.  Tobin's expert testified that vapor extraction would cost approximately $600,000 and that other methods, including chemical injection, while feasible, might not secure state regulatory approval and, if unsuccessful, would increase costs.[2]  Defendants' expert testified that

---

[1] The parties dispute whether this determination was a factual question subject to clear-error review or a mixed question of fact and law subject to *de novo* review.  We need not address this issue because we identify no error even on *de novo* review.

[2] Defendants assert that Tobin's expert stated "that chemical injection could be cheaper than vapor extraction."  Appellant's Reply Br. 15.  In fact, the expert said only that, in

5

remediation by soil removal could be accomplished for total costs of under $100,000. Evidence indicated that method presented other contamination concerns and, according to Tobin's expert, could not be effectively monitored. Defendants' own expert provided no cost estimate for chemical injection. Indeed, their expert conducted no on-site testing at all. Thus, the record provides sufficient support for vapor extraction as a reasonable method of remediation here.

*Haber v. Gutmann*, 64 A.D.3d 1106, 882 N.Y.S.2d 780 (3d Dep't 2009), cited by defendants, is inapposite insofar as it stands for the uncontroversial proposition that damages cannot be awarded based only on speculative cost estimates, or none at all. Similarly inapposite is *Hoffman v. Edison Electric Illuminating Co.*, 87 A.D. 371, 84 N.Y.S. 437 (1st Dep't 1903), which defendants cite as support for their argument that evidence of costs is, by itself, insufficient to establish damages absent a showing that those costs are reasonable. Here, that showing was supplied by Tobin's expert, who explained in detail the proposed vapor extraction technique and cast doubt on the efficacy of defendants' suggested alternative methods. In any event, defendants point to no authority holding that, to establish reasonable remediation costs, Tobin's expert had to conduct detailed studies and offer cost estimates for all other conceivable methods of remediation.

Accordingly, their sufficiency challenge to the damages award fails on the merits.

---

relation to feasibility studies, "[y]ou have to see what kind of technology that would be sufficient enough that reduces the cost." J.A. 347. No comparative cost opinion favorable to vapor extraction can reasonably be inferred.

3.     Security Deposit Offset

Tobin cross-appeals the district court's decision to offset the initially calculated damages award of $604,500 by $17,421.02, which represents the interest-adjusted amount of the security deposit that defendants' corporation Beaaro, Inc., paid upon assignment to it of the lease in 2002.    By the terms of the Stipulation, that deposit was payable to Beaaro upon "full and timely compliance" with the terms of the Stipulation. J.A. 502.    Based on defendants' breach of the Stipulation, the district court concluded that this condition precedent had not been met, and that defendants were not entitled to the deposit.    *See Tobin v. Gluck*, 137 F. Supp. 3d at 311.    It nevertheless concluded that Tobin was not entitled to retain the security deposit as a matter of New York law, which forbids a landlord from retaining such deposit if it would result in compensation beyond the actual damages sustained by a breach of lease.    *See id.* at 312 (citing *Addieg v. Tull*, 187 F. 101, 103–04 (2d Cir. 1911); *Peirson v. Lloyds First Mortg. Co.*, 260 N.Y. 214, 222, 183 N.E. 368, 370 (1932)). Accordingly, it ordered the challenged offset.

Tobin argues that under the terms of the Stipulation, only non-party Beaaro would have been entitled to the economic benefit of such an offset, not the defendants.    ] Tobin's equation of the offset amount to an affirmative award to defendants is misguided. It is, of course, black-letter law that "a corporation exists independently of its owners[] as a separate legal entity."    *Matter of Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 810 (1993).    But the district court's finding that defendants, effectively acting for Beaaro, are not contractually entitled to return of the security deposit because they breached the Stipulation precludes *any* colorable claim, including by Beaaro,

7

to recover the deposit, necessarily leaving it in Tobin's hands. Under these circumstances, failing to offset the deposit against Tobin's damages award would effectively increase that award by $17,421.02, thereby running afoul of New York landlord-tenant law. *See, e.g.*, *Stern Family Ltd. P'ship v. A.T.I. Model Prods., Inc.*, 2 A.D.3d 435, 436, 767 N.Y.S.2d 838, 838 (2d Dep't 2003) (holding that, where landlord retained security deposit and sued for unpaid rent and other charges, "damages awarded against the defendant should be reduced by the amount of the security deposit"); Robert F. Dolan, 1 Rasch's N.Y. Landlord & Tenant § 13:2 (4th ed. rev. 2016) (stating that landlord is "entitled to retain no more of [the security deposit] than will make him whole . . . for the actual damages he may have sustained by the breach").

Accordingly, the district court's $17,421.02 offset of the judgment was not error.

4.    Conclusion

We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, the December 8, 2015 judgment of the district court is AFFIRMED.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, Clerk of Court

8